HOYLE, APPELLEE; CINCINNATI INSURANCE COMPANY, APPELLANT,
*v.* DTJ ENTERPRISES, INC., ET AL., APPELLEES.

[Cite as *Hoyle v. DTJ Ents., Inc.*, 143 Ohio St.3d 197, 2015-Ohio-843.]

(No. 2013–1405—Submitted June 10, 2014—Decided March 12, 2015.)

FRENCH, J.

{¶ 1} This appeal presents questions regarding the insurability of employer intentional torts under R.C. 2745.01. We hold that an insurance provision that excludes coverage for acts committed with the deliberate intent to injure an employee precludes coverage for employer intentional torts, which require a finding that the employer intended to injure the employee.

*Factual Background*

{¶ 2} Appellee, Duane Allen Hoyle, brought this action to recover for injuries he sustained when he fell from a ladder-jack scaffold while working as a carpenter on a construction project for his employers, appellees, DTJ Enterprises, Inc. ("DTJ") and Cavanaugh Building Corporation ("Cavanaugh"). Hoyle describes a ladder-jack scaffold as an apparatus consisting of two extension ladders positioned vertically, with a horizontal walkway platform supported by brackets spanning the space between them. Ladder jacks are the brackets that support the platform. *Webster's Third New International Dictionary* 1262 (3d Ed.1993). They are generally secured to the ladder with a bolt or pin that goes though the ladder jack and is secured in back by a nut.

{¶ 3} Phillip L. Colleran, a certified safety professional and professional member of the American Society of Safety Engineers who executed an expert

affidavit on Hoyle's behalf, states that, for worker safety, each ladder-jack bracket must be secured to the ladder and the platform must be secured to each bracket. When Hoyle assembled the ladder-jack scaffold on this project, however, he did not have the bolts or pins to secure the ladder jacks to the ladders. Hoyle claims that the job superintendent, Kevin Everett, kept the bolts in his office and told employees they did not need them because they take too much time to use.

{¶ 4} On March 25, 2008, Hoyle fell approximately 14 feet from the ladder-jack scaffold and landed on a concrete pad. Just before his fall, Hoyle stepped onto a portion of the platform that extended past the ladder jack on one end, causing the ladder jack on the opposite end to lift and detach from its ladder. As Hoyle moved back toward the center, the detached ladder jack lowered, but missed the rungs of the ladder and pushed the ladder outward. The ladder and Hoyle fell to the concrete below.

{¶ 5} Hoyle sued DTJ and Cavanaugh in the Summit County Court of Common Pleas, alleging claims of employer intentional tort. Appellant, the Cincinnati Insurance Company ("CIC"), which insured DTJ and Cavanaugh under a commercial general liability ("CGL") policy, intervened and filed a complaint for a declaratory judgment that it has no obligation to indemnify DTJ and Cavanaugh for Hoyle's injuries.[1] The only issue before us in this appeal is whether CIC has a duty to indemnify DTJ and Cavanaugh should Hoyle prevail on his employer-intentional-tort claims.

{¶ 6} Unlike the broader duty to defend, an insurer's duty to indemnify its insureds is based on whether there is, in fact, actual liability. *Chemstress Consultant Co., Inc. v. Cincinnati Ins. Co.*, 128 Ohio App.3d 396, 402, 715 N.E.2d 208 (9th Dist.1998). Before turning to the language of the CIC policy and the procedural history of this case, we first briefly examine the history and scope of civil liability for employer intentional torts in Ohio.

*Employer Intentional Torts*

{¶ 7} Because of the immunity conferred by R.C. 4123.74 and Article II, Section 35, Ohio Constitution, for the vast majority of workplace injuries a workers' compensation claim is an employee's exclusive remedy. *See generally Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 110, 522 N.E.2d 489 (1988). But when an employee seeks damages resulting from an act or omission committed by the employer with the intent to injure, the claim arises outside of the employment relationship, and the workers' compensation system does not preempt the employee's cause of action. *Brady v. Safety–Kleen Corp.*, 61 Ohio St.3d 624, 576 N.E.2d 722 (1991), paragraph one of the syllabus. This court first

---

1. CIC does not dispute its obligation to defend DTJ and Cavanaugh against Hoyle's claims.

recognized an employee's right to sue his or her employer for an intentional tort in *Blankenship v. Cincinnati Milacron Chems., Inc.*, 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), syllabus. We reasoned that extending the immunity afforded to employers by the workers' compensation system to intentional torts would not further the legislative goals underlying the Workers' Compensation Act: "Affording an employer immunity for his intentional behavior certainly would not promote [a safe and injury-free work environment], for an employer could commit intentional acts with impunity with the knowledge that, at the very most, his workers' compensation premiums may rise slightly." *Id.* at 615.

{¶ 8} An intentional tort involves an act committed with the specific intent to injure or with the belief that injury is substantially certain to occur. *Jones v. VIP Dev. Co.*, 15 Ohio St.3d 90, 95, 472 N.E.2d 1046 (1984), citing 1 Restatement of the Law 2d, Torts, Section 8A (1965). When the employer proceeds despite knowledge that injuries are certain or substantially certain to result, "he is treated by the law as if he had in fact desired to produce the result." *Fyffe v. Jeno's, Inc.*, 59 Ohio St.3d 115, 118, 570 N.E.2d 1108 (1991). Under *Fyffe*, an employee could establish intent based on substantial certainty by demonstrating the following:

> (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Id.*

{¶ 9} R.C. 2745.01, which now governs employer intentional torts in Ohio, took effect on April 7, 2005, and provides as follows:

> (A) In an action brought against an employer by an employee * * * for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.
>
> (B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C) Deliberate removal by an employer of an equipment safety guard * * * creates a rebuttable presumption that the removal * * * was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

R.C. 2745.01 passes constitutional muster, *Kaminski v. Metal & Wire Prods. Co.,* 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, syllabus, despite this court's having struck down as unconstitutional prior attempts to codify employer-intentional-tort liability in Ohio. *See Brady,* 61 Ohio St.3d 624, 576 N.E.2d 722; *State ex rel. Ohio AFL–CIO v. Voinovich,* 69 Ohio St.3d 225, 631 N.E.2d 582 (1994); *Johnson v. BP Chems., Inc.,* 85 Ohio St.3d 298, 707 N.E.2d 1107 (1999).

{¶ 10} R.C. 2745.01(A) incorporates the definition of an employer intentional tort from *Jones,* 15 Ohio St.3d at 95, 472 N.E.2d 1046, and requires a plaintiff to prove either deliberate intent to injure or a belief that injury was substantially certain. But R.C. 2745.01(B) equates "substantially certain" with "deliberate intent" to injure. Thus, the " 'two options of proof [under R.C. 2745.01(A)] become: (1) the employer acted with intent to injure or (2) the employer acted with deliberate intent to injure.' " *Kaminski* at ¶ 55, quoting *Kaminski v. Metal & Wire Prods. Co.,* 175 Ohio App.3d 227, 2008-Ohio-1521, 886 N.E.2d 262, ¶ 31 (7th Dist.). "[W]hat appears at first glance as two distinct bases for liability is revealed on closer examination to be one and the same." *Rudisill v. Ford Motor Co.,* 709 F.3d 595, 602–603 (6th Cir.2013) (describing R.C. 2745.01 as "a statute at war with itself").

{¶ 11} The General Assembly's intent in enacting R.C. 2745.01 was to "significantly restrict" recovery for employer intentional torts to situations in which the employer "acts with specific intent to cause an injury." *Kaminski,* 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066 at ¶ 57; *Stetter v. R.J. Corman Derailment Servs., L.L.C.,* 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 26, citing *Kaminski* at ¶ 56. "[A]bsent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system." *Houdek v. ThyssenKrupp Materials N.A., Inc.,* 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 25.

{¶ 12} R.C. 2745.01(C) permits an employee to prove the employer's intent without direct evidence. When the employee is injured as a direct result of the employer's deliberate removal of an equipment safety guard,[2] R.C. 2745.01(C)

---

2. This court has previously addressed the definition of "equipment safety guard." *Hewitt v. L.E. Myers Co.,* 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795. But the question whether the pins

creates a rebuttable presumption that the employer intended to injure. It "is not a separate tort, it merely provides a legally cognizable example of 'intent to injure.'" *Irondale Indus. Contractors, Inc. v. Virginia Sur. Co., Inc.*, 754 F.Supp.2d 927, 933 (N.D.Ohio 2010). The *Irondale* court rejected the suggestion that R.C. 2745.01(C) permits liability without a finding of intent to cause injury.

### Hoyle's Claims

{¶ 13} In his complaint, Hoyle alleged that DTJ and Cavanaugh "acted with deliberate intent (under R.C. § 2745.01) to cause injury" and that their actions "constitute[d] or [were] equivalent to the 'deliberate removal by an employer of an equipment safety guard' as set forth in R.C. § 2745.01." DTJ and Cavanaugh moved for summary judgment on Hoyle's claims, arguing that he could not prove that they acted with intent to injure or that injury was substantially certain.

{¶ 14} The trial court granted partial summary judgment in favor of DTJ and Cavanaugh "[t]o the extent that [Hoyle's] claims rely on R.C. 2745.01(A) & (B) alone" because Hoyle "provide[d] no evidence that the Defendants acted with a specific intent to injure" him. But the trial court stated that its decision "does not apply" to the extent that Hoyle's cause of action relies upon R.C. 2745.01(C), which "necessarily include[s] the 'intent to injure.'" The trial court found genuine issues of material fact as to whether the pins normally used to secure the ladder jacks constitute an equipment safety guard and whether DTJ and/or Cavanaugh deliberately removed them. Thus, the trial court has not finally adjudicated Hoyle's employer-intentional-tort claims.

{¶ 15} In light of R.C. 2745.01 and this court's precedent regarding employer intentional torts, and because the question before this court is whether CIC is obligated to indemnify DTJ and Cavanaugh for any liability Hoyle may establish, we now turn to the language of the CIC policy. CIC maintains that even if Hoyle prevails on his employer-intentional-tort claims, any liability would be excluded from coverage because it must be premised upon the employer's deliberate intent to injure the employee.

### The Insurance Policy

{¶ 16} The CIC policy covered a policy period of March 31, 2007, through March 31, 2010. The policy's CGL Coverage Form states, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' * * * to which this insurance applies." But the CGL Coverage Form excludes coverage for bodily injuries that may reasonably be expected to result from the insured's intentional acts or that the insured expected or

---

that might have been used to secure the ladder jacks qualify as equipment safety guards is not before this court.

intended. It also excludes bodily injury to employees sustained in the workplace or arising out of duties related to the insured's business. Thus, the CGL Coverage Form provides no coverage for Hoyle's injuries. But the policy's coverage is not limited solely to that provided by the CGL Coverage Form.

{¶ 17} The question of coverage here depends entirely upon a policy endorsement entitled "Employers Liability Coverage Form—Ohio," which DTJ and Cavanaugh purchased for an additional premium. The Employers Liability Coverage Form provides coverage for "those sums that an insured becomes legally obligated to pay as damages because of 'bodily injury' sustained by your 'employee' in the 'workplace' and caused by an 'intentional act' to which this insurance applies." The Employers Liability Coverage Form defines "intentional act" as "an act which is substantially certain to cause 'bodily injury.'" Thus, the Employers Liability Coverage Form purports to extend coverage to substantial-certainty employer intentional torts that would otherwise be excluded from coverage under the CGL Coverage Form. But the Employers Liability Coverage Form also expressly excludes coverage for "liability for acts committed by or at the direction of an insured with the deliberate intent to injure."

{¶ 18} In a summary entitled "Notice to Policyholders: Ohio Employers Liability," CIC informed its insureds that the Employers Liability Coverage Form "provides coverage for employment intentional torts in which the employer had knowledge of the existence of a danger, knowledge that the danger would be substantially certain to result in harm, and required the employee to continue to perform the dangerous task." CIC also informed its insureds that R.C. 2745.01 "changes the current law" and permits recovery for employer intentional torts only upon proof of the employer's "intent to injure" or "deliberate intent" to injure. In the notice, CIC implicitly recognizes the contradiction of providing coverage for substantial-certainty employer intentional torts in light of R.C. 2745.01, which excludes liability for such torts, but CIC states that until challenges to R.C. 2745.01 have been resolved, CIC will continue to offer and provide employers liability coverage. According to CIC's appellate brief, following this court's decision in *Kaminski*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, which rejected constitutional challenges to R.C. 2745.01, CIC ceased issuing indemnity coverage for employer intentional torts in Ohio in lieu of defense-only coverage.

### CIC's Declaratory–Judgment Claim

{¶ 19} In its complaint, CIC alleged that it has no duty to indemnify DTJ and Cavanaugh under the CIC policy and that, additionally, R.C. 2745.01 and Ohio public policy preclude coverage for the employer intentional torts alleged against DTJ and Cavanaugh. CIC argued in its motion for summary judgment that any recovery on Hoyle's claims must be based upon a finding of intent to cause injury

and would therefore be excluded from coverage under the Employers Liability Coverage Form. Hoyle responded that an employer intentional tort proven with the rebuttable presumption of intent under R.C. 2745.01(C) does not involve deliberate intent to injure and would therefore not be excluded from coverage. The trial court rejected Hoyle's argument and instead held that any recovery under R.C. 2745.01 requires a finding that the employer acted with intent to cause injury. The trial court concluded that any liability Hoyle might establish would fall within the policy exclusion for acts committed by an insured with the deliberate intent to injure. Accordingly, the trial court granted summary judgment in favor of CIC.

{¶ 20} A divided panel of the Ninth District Court of Appeals reversed the summary judgment in favor of CIC. The majority framed the issue as "whether, if deliberate intent *were to be presumed* by operation of [R.C. 2745.01(C)], the claim would be excluded from coverage under the Employer Liability policy for actions taken with the 'deliberate intent' * * * to injure." (Emphasis sic.) 2013-Ohio-3223, 994 N.E.2d 492, ¶ 17. The court held, "Although the deliberate intent to injure may be presumed *for purposes of the statute* where there is a deliberate removal of a safety guard, * * * this does not in itself amount to 'deliberate intent' *for the purposes of the insurance exclusion*." (Emphasis sic.) *Id.* at ¶ 19. The court suggested that an employee may prevail on an employer-intentional-tort claim without proving deliberate intent under the policy. *Id.* at ¶ 21. Judge Hensal dissented, concluding that "deliberate intent" has the same meaning under the policy as under R.C. 2745.01 and rejecting the conclusion that liability may be imposed without a finding of deliberate intent under the policy.

{¶ 21} This court accepted CIC's discretionary appeal. 137 Ohio St.3d 1421, 2013-Ohio-5285, 998 N.E.2d 1177. CIC argues that both the terms of its policy and Ohio public policy preclude coverage. Resolution of this appeal involves interpretation of statutory and contractual language, both of which present questions of law that we review de novo. *Ceccarelli v. Levin,* 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8; *Sharonville v. Am. Emps. Ins. Co.,* 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6.

*Analysis*

{¶ 22} At the outset, we reiterate that the trial court has not determined the merits of Hoyle's employer-intentional-tort claim under R.C. 2745.01(C). The court found that Hoyle did not present direct evidence of DTJ's and Cavanaugh's intent but held that genuine issues of material fact remained as to whether Hoyle could prevail on his claim by using the rebuttable presumption under R.C. 2745.01(C). Thus, Hoyle may still demonstrate that DTJ and/or Cavanaugh deliberately removed an equipment safety guard and that his injuries occurred as a direct result, at which point he will be entitled to a presumption that DTJ and

Cavanaugh intended to injure him. But the question before us is a legal one—if the CIC policy excludes coverage for all employer intentional torts, CIC would have no duty to indemnify DTJ and Cavanaugh, even if Hoyle is able to establish liability. In that regard, CIC is entitled to a declaratory judgment if its policy excludes coverage for an employer intentional tort using the R.C. 2745.01(C) presumption.

{¶ 23} The parties dispute the significance of the R.C. 2745.01(C) presumption and any resulting liability. A presumption is a procedural device that courts resort to "only in the absence of evidence by the party in whose favor [the] presumption would otherwise operate." *Ayers v. Woodard,* 166 Ohio St. 138, 140 N.E.2d 401 (1957), paragraph three of the syllabus. A legal presumption "imputes to certain facts or [a] group of facts a certain prima facie significance or operation." *Shepherd v. Midland Mut. Life Ins. Co.,* 152 Ohio St. 6, 15, 87 N.E.2d 156 (1949). "To establish a 'presumption' is to say that a finding of the predicate fact * * * produces 'a required conclusion in the absence of explanation * * *.' " *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), quoting 1 D. Louisell & C. Mueller, *Federal Evidence,* Section 67, 536 (1977). Under R.C. 2745.01(C), the predicate facts—an employer's deliberate removal of an equipment safety guard and directly resulting injury—give rise to a prima facie finding of intent to injure. For purposes of this appeal, we must assume that Hoyle can establish that DTJ or Cavanaugh deliberately removed an equipment safety guard and that the removal was a direct cause of his injury.

{¶ 24} The presumption under R.C. 2745.01(C) does not shift the ultimate burden of proof from Hoyle, but "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption." Evid.R. 301. If that party produces evidence that "counterbalances the presumption or * * * leave[s] the case in equipoise," then the presumption disappears and the case must be disposed of on the evidence presented, without reference to the presumption. *In re Guardianship of Breece,* 173 Ohio St. 542, 555, 184 N.E.2d 386 (1962); *Shepherd* at 25. But if the employer fails to produce evidence to rebut the presumption under R.C. 2745.01(C), then the effect of the presumption is that "the employee 'proves that the employer committed the [removal] with the intent to injure another.' " *Liberty Mut. Fire Ins. Co. v. Ivex Protective Packaging, Inc.,* S.D.Ohio No. 3:13–cv–175, 2014 WL 6687150, *2 (Nov. 26, 2014), quoting R.C. 2745.01(A).

{¶ 25} It is tempting to look to the merits of Hoyle's claims and hold that CIC has no duty to indemnify because, despite the presumption in R.C. 2745.01(C), the trial court found that Hoyle produced no evidence that DTJ and Cavanaugh acted with a specific intent to injure him. But "[t]he whole point of [R.C. 2745.01(C)] is

to presume the injurious intent required under divisions (A) and (B)" in the absence of direct evidence. *Fickle v. Conversion Technologies Internatl., Inc.,* 6th Dist. Williams No. WM–10–016, 2011-Ohio-2960, 2011 WL 2436750, ¶ 32, fn. 2. Because the trial court has not determined whether the presumption arises in this case, it cannot have determined whether DTJ and Cavanaugh can rebut the presumption.

{¶ 26} If Hoyle establishes that DTJ and Cavanaugh deliberately removed an equipment safety guard and that the removal directly caused his injuries, he will be entitled to a presumption that DTJ and Cavanaugh acted with the intent to harm him. If DTJ and Cavanaugh do not rebut the presumption, then Hoyle will have established that they acted with intent to harm him as a matter of law. In any case, liability on Hoyle's employer-intentional-tort claim will be based upon a finding that DTJ and Cavanaugh acted with intent to injure Hoyle. *Houdek,* 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 25.

{¶ 27} The Employers Liability Coverage Form purports to extend coverage for substantial-certainty employer intentional torts, but not direct-intent employer intentional torts. While DTJ and Cavanaugh rely on the language of the Employers Liability Coverage Form to argue that "deliberate intent" has a more limited meaning under the policy than under R.C. 2745.01, that argument does not address the overarching prohibition against legal liability for employer intentional torts in the absence of the employer's deliberate intent to cause injury. *See Kaminski,* 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 56. Under R.C. 2745.01, which took effect two years prior to the commencement of the policy period, DTJ and Cavanaugh cannot be legally obligated to pay damages for an employer intentional tort except based upon a finding that they acted with the intent to injure Hoyle. Whether Hoyle proves that intent with direct evidence under R.C. 2745.01(A) or with an unrebutted presumption under R.C. 2745.01(C), intent to injure is an essential element of his claim for an employer intentional tort. *Id.* Thus, although Hoyle might prevail without direct evidence of a deliberate intent to injure, he cannot recover without a finding that DTJ and Cavanaugh acted with the intent to injure. *Liberty Mut. Fire Ins. Co.,* S.D.Ohio No. 3:13–cv–175, 2014 WL 6687150, at *12. Because the Employers Liability Coverage Form excludes from coverage "liability for acts committed by or at the direction of an insured with the deliberate intent to injure," there is no set of facts under which DTJ and Cavanaugh could be legally liable to Hoyle that falls within the policy's coverage.

*Public Policy Against Insuring for Employer Intentional Torts*

{¶ 28} CIC additionally argues that it is not required to indemnify DTJ and Cavanaugh because any coverage under the Employers Liability Coverage Form would violate Ohio's long-standing public policy prohibiting insurance against

liability for an insured's own intentional torts, now that it has been established that R.C. 2745.01 is constitutional. That public policy is based on " 'the assumption that [intentionally tortious] conduct would be encouraged if insurance were available to shift the financial cost of the loss from the wrongdoer to his insurer.' " *Harasyn v. Normandy Metals, Inc.*, 49 Ohio St.3d 173, 176, 551 N.E.2d 962 (1990), quoting Farbstein & Stillman, *Insurance for the Commission of Intentional Torts*, 20 Hastings L.J. 1219, 1245–1246 (1969). But not all intentional torts are uninsurable in Ohio. *Buckeye Union Ins. Co. v. New England Ins. Co.*, 87 Ohio St.3d 280, 283, 720 N.E.2d 495 (1999). *Harasyn* carved out from the general rule prohibiting insurance for intentional torts those employer intentional torts based solely on the substantial certainty of injury. We reasoned that "where intent is inferred from 'substantial certainty' of injury, the presence of insurance has less effect on the tortfeasor's actions." *Harasyn* at 176.

{¶ 29} Because the terms of the Employers Liability Coverage Form preclude coverage in this case, we need not broadly determine whether the rationale in *Harasyn* remains applicable in light of the subsequent enactment of R.C. 2745.01 or whether Ohio public policy prohibits any type of indemnity coverage for employer intentional torts.

*Illusory Coverage*

{¶ 30} Finally, we turn to DTJ and Cavanaugh's argument that if, as we have found, the CIC policy does not provide indemnity coverage for employer intentional torts, then the Employers Liability Coverage Form provides no coverage at all and is illusory. Relying on *Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176, 951 N.E.2d 770, CIC responds that the endorsement is not illusory, because even if it did not provide the coverage that DTJ and Cavanaugh intended to purchase, it provided other coverage, including negligence-only coverage when employers are sued in dual capacities and coverage in situations not involving the employment relationship.

{¶ 31} DTJ and Cavanaugh did not raise the issue of illusory coverage in the trial court, and neither the trial court nor the court of appeals addressed this issue. " 'Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed.' " *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81, 679 N.E.2d 706 (1997), quoting *Goldberg v. Indus. Comm. of Ohio*, 131 Ohio St. 399, 404, 3 N.E.2d 364 (1936). Therefore, we decline to address DTJ and Cavanaugh's argument that the Employers Liability Coverage Form provided only illusory coverage.

## *Motion for Leave to File Supplemental Authority*

{¶ 32} On July 1, 2014, subsequent to oral argument, CIC moved this court for leave to file supplemental authority, pursuant to S.Ct.Prac.R. 17.09(A), which provides, "Unless ordered by the Supreme Court, the parties shall not tender for filing and the Clerk of the Supreme Court shall not file any additional briefs or other materials relating to the merits of the case after the case has been orally argued." CIC requests leave to file an affidavit from a vice president in its Commercial Lines Department regarding CIC's actions with respect to employers' liability coverage following this court's decisions in *Kaminski*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, and *Stetter*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092. CIC states that it obtained the new affidavit in response to questions posed by various justices during oral argument. DTJ, Cavanaugh, and Hoyle oppose CIC's motion.

{¶ 33} The affidavit that CIC presents, having been obtained following oral argument, was not in the record before either the trial court or the court of appeals. It is a fundamental principle that an appellate court is constrained to review only those matters contained in the record. *See Brown v. Cleveland*, 66 Ohio St.2d 93, 98, 420 N.E.2d 103 (1981). The record on appeal in this court consists of the original papers and exhibits, transcripts, journal entries, and the docket from the trial court and the court of appeals. S.Ct.Prac.R. 15.01(A). Thus, the new affidavit is not properly a part of the record, and we may not expand the record by permitting the filing of evidentiary material that was not before the lower courts. Moreover, the substance of the evidence CIC requests to file—that CIC credited DTJ and Cavanaugh $15 for the eight-day period between our decisions in *Kaminski* and *Stetter* and the end of the applicable policy period—is not relevant to the legal questions we answer in this appeal. Accordingly, we deny CIC's motion for leave to file post-oral-argument supplemental material.

## *Conclusion*

{¶ 34} Because liability for an employer intentional tort under R.C. 2745.01 requires a finding that the employer acted with the intention to injure an employee, we conclude that an insurance provision that excludes from coverage liability for an insured's act committed with the deliberate intent to injure an employee precludes coverage for employer intentional torts. As a result, no facts could give rise to a duty upon CIC to indemnify DTJ or Cavanaugh, even if Hoyle were to prevail on his claims against them. Accordingly, the trial court correctly granted summary judgment in favor of CIC on its claim for declaratory judgment. We therefore reverse the judgment of the Ninth District Court of Appeals and reinstate the summary judgment in favor of CIC.

Judgment reversed.

O'CONNOR, C.J., and O'DONNELL, J., concur.

LANZINGER and KENNEDY, JJ., concur in syllabus and judgment only.

PFEIFER and O'NEILL, JJ., dissent.

---

**LANZINGER, J., concurring in syllabus and judgment only.**

{¶ 35} I concur in judgment, but I would frankly state that by defining "substantially certain" acts as "deliberate" in R.C. 2745.01, the General Assembly has closed off employer intentional torts. Even if a plaintiff proves the employer's intent to injure directly under R.C. 2745.01(A) or (B), or by an unrebutted presumption under R.C. 2745.01(C), the act is not insurable as was the old substantial-certainty intentional tort. *Harasyn v. Normandy Metals, Inc.*, 49 Ohio St.3d 173, 176, 551 N.E.2d 962 (1990). There is now nothing less than deliberate intent. As a practical matter, employees will be limited to workers' compensation remedies for their workplace injuries.

KENNEDY, J., concurs in the foregoing opinion.

---

**O'NEILL, J., dissenting.**

{¶ 36} Thirty-three years ago, the Ohio Supreme Court, in *Blankenship v. Cincinnati Milacron Chem., Inc.*, 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), declared that the very proposition that an employer could be immune from civil liability arising from intentionally injuring its workers was an outrage. Today is a good day to review the sordid history of so-called intentional torts in the workplaces of Ohio. The case before us demonstrates the money-driven efforts to return once again to the pre-*Blankenship* days, when profits were never placed in peril by the egregious acts of management.

{¶ 37} Let's take a look at why *Blankenship* was so important. The facts speak for themselves. In *Blankenship*, the complaint alleged that workers had been intentionally exposed to toxic chemicals without warning and as a result had suffered chemical intoxication. The trial court had dismissed the claim as insufficient under Civ.R. 12(B)(6) and held that workers' compensation was the exclusive remedy for the poisoned workers, and the court of appeals had affirmed.

{¶ 38} The Supreme Court of Ohio reversed. The court concluded, "Since an employer's intentional conduct does not arise out of employment, R.C. 4123.74 does not bestow upon employers immunity from civil liability for their intentional torts and an employee may resort to a civil suit for damages." *Blankenship* at 613. The court held, "An employee is not precluded by Section 35, Article II of

the Ohio Constitution, or by R.C. 4123.74 and 4123.741 from enforcing his common law remedies against his employer for an intentional tort." *Id.* at syllabus. The court determined that it was unreasonable to equate the negligent conduct covered by the Ohio Workers' Compensation Act with intentional conduct in terms of the degree of risk facing Ohioans while at work. *Id.* at 613.

{¶ 39} In response, the General Assembly enacted former R.C. 4121.80, Am.Sub.S.B. No. 307, 141 Ohio Laws, Part I, 733–737. R.C. 4121.80 was invalidated by this court in *Brady v. Safety–Kleen Corp.*, 61 Ohio St.3d 624, 576 N.E.2d 722 (1991). Eight years later, this court affirmed the holding in *Brady* and clearly stated that "any statute created to provide employers with immunity from liability for their intentional tortious conduct cannot withstand constitutional scrutiny." *Johnson v. BP Chems., Inc.,* 85 Ohio St.3d 298, 304, 707 N.E.2d 1107 (1999). In 1995, the General Assembly enacted yet another statute intended to eliminate liability for employer intentional torts. Based on our holding in *Brady* and *Blankenship,* former R.C. 2745.01 was invalidated by this court in its entirety because it was unconstitutional and because the excessive statutory requirements and heightened burden of proof in the statute "created a cause of action that is simply illusory." *Johnson* at 306.

{¶ 40} The current version of R.C. 2745.01 was challenged and upheld in *Kaminski v. Metal & Wire Prods. Co.,* 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066. As Justice Pfeifer lamented in his dissenting opinion, "the General Assembly has found a court that agrees with it: workers have no constitutionally protected right to seek redress for injuries suffered from their employers' intentional torts." *Id.* at 278 (Pfeifer, J., dissenting). The gradual extinction of the rights of workers to recover for injuries they suffer as a result of intentional conduct by their employers serves no one. Indeed, "this abdication of employer responsibility * * * is an affront to the dignity of every single working man and working woman in Ohio." *Blankenship,* 69 Ohio St.2d at 617, 433 N.E.2d 572 (Celebrezze, C.J., concurring).

{¶ 41} The lead opinion states that this case is merely about the insurability of employer intentional torts. The lead opinion states and reiterates that Hoyle's intentional-tort claim against his employer has yet to be decided and remains viable under the statute. Lead opinion, ¶ 14, 22. I wish I could agree. Hoyle deserves his day in court. Unfortunately, I believe that Justice Lanzinger is correct when she writes that as a result of this decision, "[t]here is now nothing less than deliberate intent" and that the practical effect of the lead opinion is that injured employees will be limited to workers' compensation. *Id.* at ¶ 35 (Lanzinger, J., concurring in syllabus and judgment only).

{¶ 42} Now we have insurance agents selling worthless pieces of paper that will never pay a claim to assuage the fears of managers as they, in the name of increased production and reduced labor costs, remove saw guards, disable air-filtration systems, and store time-consuming safety equipment in their offices. After all, they have been assured by their insurance agent that if they get caught intentionally injuring their employees, it will be an insured event.

{¶ 43} In this case, DTJ Enterprises, Inc., and Cavanaugh Building Corporation stand in the spotlight and very well may be found culpable for the missing safety device. In that event, they could be legally liable to Hoyle under R.C. 2745.01(A) if he can show that the employer acted with intent to injure. One of the ways that Hoyle can show intent, should this matter ever see the inside of a courtroom, is by using the presumption under R.C. 2745.01(C). Most important to our inquiry here is that the insurance policy in question explicitly excludes coverage only for *deliberate* intentional torts. And while the policy defines an intentional act as an act *substantially certain* to cause bodily injury, it is significant that the policy does not limit the definition of intent to mean *deliberate* intent. Thus DTJ and Cavanaugh could be legally liable to Hoyle for intentional conduct under the statute and within the scope of the policy. But somehow the lead opinion reaches the conclusion that there is no set of facts under which DTJ and Cavanaugh could be legally liable to Hoyle that falls within the policy's coverage. I disagree. A single act could in fact be found to be substantially certain to cause an injury but not be driven by a deliberate intent to injure.

{¶ 44} The lead opinion rationalizes its erroneous conclusion by adopting the assertion of Cincinnati Insurance Company ("CIC") that it is not required to indemnify DTJ and Cavanaugh, because any coverage under the Employers Liability Coverage Form—Ohio violates Ohio's long-standing public policy prohibiting insurance against liability for an insured's own intentional torts. CIC's brazen assertion here is disingenuous at best, considering that it drafted the policy and collected premiums from DTJ. Can this court truly countenance an insurance company's assertion that it should be permitted to collect a premium for an event that is never going to happen?

{¶ 45} More important, as the lead opinion points out, this court has determined that not all intentional torts are uninsurable. Lead opinion, ¶ 28, citing *Buckeye Union Ins. Co. v. New England Ins. Co.*, 87 Ohio St.3d 280, 283, 720 N.E.2d 495 (1999) (minority opinion). "[I]nsurance coverage should be prohibited only for direct-intent torts." *Buckeye Union* at 283. As Justice Pfeifer explained in his opinion in *Buckeye Union*, "in *Harasyn*, this court discussed the different levels of intent involved with intentional acts. 'The first level, * * * direct intent,' is where the actor does something which brings about the exact result desired. In the second, the actor does something which he believes is

substantially certain to cause a particular result, even if the actor does not desire that result.' " *Id.* at 283, quoting *Harasyn v. Normandy Metals, Inc.,* 49 Ohio St.3d 173, 175, 551 N.E.2d 962 (1990). Nobody in this case seems to be arguing that DTJ or Cavanaugh directly intended Hoyle to fall 14 feet from the ladder-jack scaffold onto a concrete pad. Rather, the genuine issue of material fact here is whether or not the job superintendent kept the bolts necessary to secure the ladder jacks to the ladders in his office because they took too much time to use. That is the real question before this court. This court has everything it needs to hold in favor of the policy holder in this case. It has a statute, a policy bought and paid for, and relevant caselaw of the Supreme Court of Ohio. Regardless of these binding guideposts, the majority forges ahead in the wrong direction. "What is good for workers is good for Ohio." *Blankenship,* 69 Ohio St.2d at 620, 433 N.E.2d 572 (Brown, J., concurring). This statement is no less true today than it was in 1982. The courthouse doors should not be closed to a person who suffered an intentional injury merely because he was at work. Indeed, the General Assembly has clearly made that proposition the law of Ohio. You intentionally hurt someone, you must pay—even if it happens in the workplace. And until that determination has been made by a competent court, the duty to indemnify requires a defense. There is no other logical explanation for accepting the premiums on this particular insurance policy.

{¶ 46} I would affirm the Ninth District's holding in this case. CIC got the benefit of its deal with DTJ, and now, under the express terms of its policy, it should absolutely be required, based on the language it authored itself, to indemnify DTJ and Cavanaugh for any intentional tort except for those acts committed with deliberate intent.

{¶ 47} I dissent.

PFEIFER, J., concurs in the foregoing opinion.

---

Plevin & Gallucci and David R. Grant; and Paul W. Flowers Co., L.P.A., and Paul W. Flowers, for appellee Duane Allen Hoyle.

Koehler Neal, L.L.C., and Timothy J. Fitzgerald; and Michael M. Neltner and Stephen J. Chuparkoff, for appellant, Cincinnati Insurance Company.

Jackson Kelly, P.L.L.C., and Mark W. Bernlohr; Davis & Young, L.P.A., and David G. Utley; and Morrow & Meyer, L.L.L., and Todd T. Morrow, for appellees DTJ Enterprises, Inc., and Cavanaugh Building Corporation.

Freund, Freeze & Arnold and T. Andrew Vollman, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Traska Kimbrell, Ltd., and Peter D. Traska, urging affirmance for amicus curiae Ohio Association for Justice.