[Cite as *Patterson v. Cincinnati Ins. Cos.*, 2017-Ohio-2981.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104371**

## JOLENE PATTERSON, INDIVIDUALLY AND AS ADMINISTRATOR, ETC.

PLAINTIFF-APPELLANT

vs.

## CINCINNATI INSURANCE COMPANIES

DEFENDANT-APPELLEE

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-837641

**BEFORE:** Jones, J., Keough, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** May 25, 2017

**ATTORNEYS FOR APPELLANT**

John F. Burke
BurkesLaw, L.L.C.
614 West Superior Avenue
Rockefeller Building, Suite 1500
Cleveland, Ohio 44113

David B. Henderson
Raymond J. Schmidlin, Jr.
Henderson & Schmidlin Co., L.P.A.
840 Brainard Road
Highland Heights, Ohio 44143


**ATTORNEYS FOR APPELLEE**

Patrick S. Corrigan
Patrick S. Corrigan, Esq.
55 Public Square, Suite 930
Cleveland, Ohio 44113

Michael M. Neltner
P.O. Box 145496
Cincinnati, Ohio 45250

LARRY A. JONES, SR., J.:

**{¶1}** The plaintiff-appellant in this case is Jolene Patterson, individually and as administrator of the estate of Douglas Patterson, deceased, and as assignee of Fabrizi Trucking and Paving Co., Inc. ("Trucking and Paving") and Fabrizi Recycling, Inc. ("Recycling") (collectively "Fabrizi entities"). She appeals from the trial court's April 2016 decision granting summary judgment in favor of defendant-appellee, the Cincinnati Insurance Companies. For the reasons that follow, we reverse and remand for further proceedings.

## I. Procedural and Factual History

**{¶2}** Jolene Patterson was the wife of Douglas Patterson. Douglas was employed by Trucking and Paving. He was killed in 2011 when the bucket of an excavator disengaged and struck him as he stood in a trench where he was working.

**Underlying Action:** *Jolene Patterson v. Fabrizi Entities*

**{¶3}** In 2012, Jolene filed an action against Trucking and Paving under the theory of employer intentional tort liability. *Patterson v. Fabrizi Trucking & Paving Co.*, Cuyahoga C.P. No. CV-12-776212.[1] It was revealed during the course of discovery that Recycling had purchased the subject excavator and transferred it to Trucking and Paving.[2]

---

[1]Other defendants were also named, but Jolene's claims against them were either settled or dismissed.

[2]The record demonstrates that because Recycling was in the recycling business, it was exempted from paying taxes. Thus, Recycling purchased the excavator for the tax savings and then transferred it to Trucking and Paving. It was purchased at an auction in California.

After this discovery, in 2013, Jolene filed an action against Recycling on the theories of negligence and product liability. *Patterson v. Fabrizi Recycling*, Cuyahoga C.P. No. CV-13-808900. In July 2013, the two cases were consolidated, and proceeded under the *Trucking & Paving* case, Case No. CV-12-776212.

{¶4} At all relevant times, both Trucking and Paving and Recycling were covered under insurance policies issued by Cincinnati Insurance.[3] Cincinnati Insurance provided an attorney to the Fabrizi entities throughout the underlying litigation, but maintained that it did not have a duty to indemnify either entity. The Fabrizi entities were permitted to select their counsel; they chose John Christie ("Christie"), who represented both entities for the majority of the litigation.

{¶5} Discovery continued after the two cases were consolidated, and included several witnesses being deposed. In December 2013, the parties utilized private mediation in an attempt to settle their dispute, to no avail. Both parties (Jolene and the Fabrizi entities) filed motions for summary judgment in the spring of 2014. A ruling on those motions was held in abeyance, however, because the parties engaged in settlement negotiations.

{¶6} A settlement conference was scheduled for May 15, 2014, ahead of a June 23, 2014 trial date. The trial court issued an order prior to the settlement conference compelling counsel for the Fabrizi entities to attend the conference. By all accounts, counsel for the entities did appear at the settlement conference, but refused to participate,

---

[3]The Fabrizi entities were covered for $2 million under the general liability policy, and for an additional $9 million under the umbrella policy.

and a settlement was not reached.

{¶7} Another settlement conference was held on May 29, 2014, and the trial court's judgment memorializing it states that "all parties appeared through counsel. Parties are working toward a resolution. Settlement conference continued to June 23, 2014 * * *. Trial is converted to a settlement conference." A telephone conference with all parties and the trial court was held on July 9, 2014, during which the "parties informed the court that [a] settlement agreement ha[d] been reached." The settlement conference was continued until July 29, 2014, and the court granted the parties up until that date to finalize their agreement. The court stated that if a finalized agreement was not produced by that date, a new trial date would be set and there would be no further continuances.

{¶8} A settlement agreement was not produced on July 29, 2014, and thus, the trial court set a September 3, 2014 hearing date for consideration of the pending summary judgment motions, and a trial date of September 29, 2014. A transcript from the September 3 hearing is in the record and demonstrates that attorney Christie appeared on behalf of the Fabrizi entities for the purpose of defending the entities' motion for summary judgment. Attorney Patrick Milligan ("Milligan") also appeared on behalf of the Fabrizi entities, and he, along with Jolene's attorney, represented to the court that the parties had reached a settlement and detailed what it was.[4] The court ordered the parties to submit a "more detailed entry of dismissal within 30 days."

{¶9} At the hearing, attorney Christie informed the court that attorney Milligan had

---

[4]Attorney Milligan filed a notice of appearance as the Fabrizi entities' attorney after the hearing.

negotiated on behalf of the Fabrizi entities to reach the settlement for Jolene. Christie further represented that Cincinnati Insurance was not aware that a settlement had been reached, but admitted that he was present, along with attorney Milligan, for the negotiations, that he discussed the negotiations with attorney Milligan, and that he "notified Cincinnati [Insurance] of the process and * * * asked them if they wanted to play a role in the settlement and they have declined."

{¶10} After the hearing, Jolene submitted "evidence of damages," and the parties submitted a proposed consent judgment. Under the proposed agreement, judgment was to be entered against Trucking and Paving and Recycling, jointly and severally, and in favor of Jolene, in the amount of $3,119,000. After review, the proposed consent judgment was signed by the trial court judge, and the entry stated that the court had considered Jolene's evidence of damages and found the "amount of the judgment to be fair and reasonable," and that the parties' counsel had also reviewed the evidence and reached the same conclusion. In addition to the trial court judge's signature, the judgment was also signed by Jolene's attorney, and attorney Milligan for the Fabrizi entities. The case was removed from the trial court's docket. In July 2015, Jolene filed a motion to enforce the settlement agreement, which the trial court denied, citing its lack of jurisdiction.

**This Action:** *Jolene Patterson v. Cincinnati Insurance*

{¶11} Meanwhile, in December 2014, Jolene had filed the instant action against Cincinnati Insurance, which was filed as a supplemental complaint under R.C. 3929.06

and a complaint for declaratory judgment.[5]  This case was handled by a different trial judge than the underlying action.  Jolene alleged in her complaint that during the underlying litigation, the insurance company maintained that it did not have to indemnify the Fabrizi entities and, therefore, refused to participate in settlement conferences, mediation, or alternative dispute resolution mechanisms.  She also alleged that the insurance company failed to conduct an adequate and complete investigation of the claims against the Fabrizi entities.

{¶12} Attached to the complaint was a "covenant not to execute and assignment of rights."  The covenant and assignment was entered into between Jolene and Emilio Fabrizi and Maria Fearer, the presidents of Trucking and Paving and Recycling, respectively.  Under the covenant and assignment, the Fabrizi entities agreed to pay $119,000 of the $3,119,000 judgment to Jolene, and assigned their rights under the Cincinnati Insurance policy to Jolene.

{¶13} In her complaint, Jolene alleged that she requested payment of the $3 million

---

[5]R.C. 3929.06 governs "rights of judgment creditor or insured tortfeasor; binding legal effect of judgment between insurer and insured," and provides in relevant part as follows:

> If a court in a civil action enters a final judgment that awards damages to a plaintiff for injury, death, or loss to the person or property of the plaintiff or another person for whom the plaintiff is a legal representative and if, at the time that the cause of action accrued against the judgment debtor, the judgment debtor was insured against liability for that injury, death, or loss, the plaintiff or the plaintiff's successor in interest is entitled as judgment creditor to have an amount up to the remaining limit of liability coverage provided in the judgment debtor's policy of liability insurance applied to the satisfaction of the final judgment.

R.C. 3929.06(A)(1).

balance from the insurance company, but the company denied that it had any obligation to indemnify the Fabrizi entities under the policy. Count 1 of the complaint was for breach of contract and bad faith, and Count 2 sought a declaratory judgment that the Fabrizi entities were entitled to coverage, including indemnification, under their insurance policy, and that as an assignee of the entities, Jolene was entitled to judgment against the insurance company for the remaining $3 million balance of the settlement.

{¶14} The insurance company filed a Civ.R. 12(B)(6) motion to dismiss, which was denied. Thereafter, the company filed its answer and counterclaimed for declaratory judgment that there was no coverage for Trucking and Paving against Jolene's claim of an employer intentional tort, and no coverage for Recycling against Jolene's claims of negligence and product liability.

{¶15} In regard to the employer intentional tort claim, the company alleged that the policy excluded coverage for "acts committed by or at the direction of an insured with the deliberate intent to injure." In regard to the negligence and product liability claims, the insurance company claimed that Jolene never proved that Recycling was negligent or that its negligence contributed to her damages. According to Cincinnati Insurance, shortly after raising the negligence claim, Jolene "unilaterally cut off all possibility for [the company] to rebut these allegations, make any settlement, or disprove the theory by entering into the * * * 'Consent Judgment' and dismissing the tort action against all Fabrizi entities." Answer and counterclaim, ¶ 40.

{¶16} In addition to other defenses set forth in its answer and counterclaim, the insurance company also contended that the consent judgment that Jolene and the Fabrizi

entities entered into was "fraudulent, collusive, improper, a sham and * * * contrary to Ohio law." *Id.* at ¶ 48. The company therefore sought to have the agreement declared "null and void and unenforceable." *Id.*

{¶17} The insurance company sought, and was granted, bifurcation and stay of Jolene's bad faith claim. Jolene, who had opposed the bifurcation and stay, filed a motion to compel and requested that the trial court conduct an in camera inspection of the company's claims file. Cincinnati Insurance opposed Jolene's motion to compel and filed a motion for a protective order. The trial court granted Jolene's request for an in camera inspection and held her motion to compel and the insurance company's motion for a protection order in abeyance.

{¶18} After an in camera inspection, the trial court ruled that all the documents in the company's claims file were privileged and not relevant to Jolene's claims for breach of contract and declaratory judgment. The trial court, therefore, denied Jolene's motion to compel and granted Cincinnati Insurance's motion for a protective order.

{¶19} Both Jolene and the insurance company filed motions for summary judgment. In opposing the insurance company's motion, Jolene sought additional time for discovery as to her bad faith claim, as well as an additional in camera inspection of the company's claims file. In April 2016, the trial court granted the insurance company's summary judgment motion, and denied Jolene's summary judgment motion and request for additional discovery time. Jolene now appeals, raising the following three assignments of error for review:

> I. The trial court erred when it granted appellee's motion for summary judgment and ruled appellee is not bound by the assignment or judgment entry executed by the Patterson family and the Fabrizi entities, and approved by [the trial court judge], even though appellee refused to indemnify either Fabrizi entity, placing its insureds at risk of a significant adverse judgment, and evidence of liability and damages was submitted to [the trial court judge] well before she approved the entry.

II.   The trial court erred when it denied appellant's motion for summary judgment.

III.   The trial court erred when it denied appellant's motion for extension of time to complete additional discovery.

## II.   Law and Analysis

{¶20} Jolene's first two assignments of error challenge the trial court's ruling on the motions for summary judgment and will be considered together.

{¶21} This court's review of a trial court's decision on summary judgment is de novo.   *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24.   Summary judgment is appropriate only when the moving party demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor.   Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).

{¶22} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact.   *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).   However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type

listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at *id.*; *Vahila* at 430; Civ.R. 56(E).

**Cincinnati Insurance's Motion for Summary Judgment**

{¶23} Cincinnati Insurance advanced the following two main theories in support of its motion for summary judgment: (1) the current law in Ohio regarding employer intentional tort precluded coverage, and (2) the Fabrizi entities violated several provisions of the insurance contract by entering into the consent judgment with Jolene.

**Employer Intentional Tort Claim against Trucking and Paving**

{¶24} Our analysis of Jolene's intentional tort claim is brief. The relevant law governing employer intentional torts limits claims to situations in which the employer "acts with specific intent to cause an injury." *Kaminski v. Metal & Wire Prods.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 56; *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 26, citing *Kaminski* at *id.* "'[A]bsent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system.'" *Cincinnati Ins. Co. v. DTJ Ents., Inc.* (*In re Hoyle*), 143 Ohio St.3d 197, 2015-Ohio-843, 36 N.E.3d 122, ¶ 11, quoting *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491,

2012-Ohio-5685, 983 N.E.2d 1253, ¶ 2. Thus, "an insurance provision that excludes coverage for acts committed with the deliberate intent to injure an employee precludes coverage for employer intentional torts, which require a finding that the employer intended to injure the employee." *Hoyle* at ¶ 1. The policy here excluded from coverage injury that resulted from the "intentional or criminal acts of the insured."

{¶25} There simply is no evidence in the record before us to support a claim that Trucking and Paving, the entity against whom Jolene made her intentional tort claim, deliberately intended to injure Douglas Patterson. Moreover, *Hoyle* makes it clear that even if there were such evidence, coverage for such conduct would have been excluded under the policy. Therefore, summary judgment was properly granted in favor of the insurance company, and against Jolene, as it related to any claim of breach of contract, bad faith, or declaration sought that the insurance company had to indemnify, based on the theory of employer intentional tort.

**Consent Judgment's Impact on Claims against Recycling**

{¶26} The crux of this appeal revolves around the consent judgment and whether Cincinnati Insurance's lack of consent to the judgment invalidates it. The record here establishes that, throughout the pendency of the underlying litigation, the insurance company denied its duty to indemnify the Fabrizi entities. Because of our finding above, that Jolene's claim against Trucking and Paving of an intentional employer tort should not have survived summary judgment, the discussion now focuses solely on Jolene's negligence and product liability claims against Recycling vis-á-vis the consent judgment.

{¶27} In *Sanderson v. Ohio Edison Co.*, 69 Ohio St.3d 582, 635 N.E.2d 19 (1994),

the Ohio Supreme Court held that:

> where an insurer unjustifiably refuses to defend an action, leaving the insureds to fend for themselves, the insureds are at liberty to make a reasonable settlement without prejudice to their rights under the contract. By abandoning the insureds to their own devices in resolving the suit, the insurer voluntarily forgoes the right to control the litigation and, consequently, will not be heard to complain concerning the resolution of the action in the absence of a showing of fraud, even if liability is conceded by the insureds as a part of settlement negotiations.

*Id.* at 586.

{¶28} Cincinnati Insurance contended, and the trial court agreed, that *Sanderson* did not apply to this case because the insurance company *did* defend in this case. While it is true that Cincinnati Insurance defended here, we find that that is not the end of the inquiry. We first note that there is a distinction between a duty to defend and a duty to indemnify.

{¶29} It is established that an insurer's "duty to defend against a claim arises in a different manner from a duty to indemnify for any liability that results from that claim." *Elevators Mut. Ins. Co. v. Scassa*, 9th Dist. Wayne No. 03CA0045, 2004-Ohio-3428, ¶ 12, citing *W. Lyman Case & Co. v. Natl. City Corp.*, 76 Ohio St.3d 345, 347, 667 N.E.2d 978 (1996). "While a duty to defend arises if the allegations in the pleadings state a claim 'potentially and arguably' within the policy's coverage, * * * the duty to indemnify, on the other hand, arises only if liability in fact exists under the policy." *Elevators Mut.* at *id.*, quoting *Wedge Prods. v. Hartford Equity Sales Co.*, 31 Ohio St.3d 65, 67, 509 N.E.2d 74 (1987); *see also Chemstress Consultant Co. v. Cincinnati Ins. Co.*, 128 Ohio App.3d 396, 402, 715 N.E.2d 208 (9th Dist.1998).

**{¶30}** We next note the "frustration of purpose" that may be created when, as in this case, an insurance company defends in an action, but maintains that it is not liable to indemnify. *Ward v. Custom Glass & Frame*, 105 Ohio App.3d 131, 137, 663 N.E.2d 734 (8th Dist.1995). In *Ward*, an employee filed an intentional tort action against his employer for injuries he sustained in the course of his job. His employer was insured under a policy. The insurance company defended the employer under the policy's reservation of rights provision, but maintained that the employer was not covered under the policy and would be solely liable for any damages.

**{¶31}** The case went to arbitration, where the employee was awarded damages. The insurance company appealed the award to the trial court. The employer demanded that the insurance company either accept coverage of the employee's claim or withdraw the appeal. The insurance company maintained that there was no coverage and withdrew its notice of appeal. The employer then settled with the employee for the amount of the arbitration award, which was reduced to judgment.

**{¶32}** Thereafter, the employer filed an action against the insurance company seeking recovery for the judgment amount. The insurance company filed a motion for summary judgment, claiming, among other things, that the employer breached the insurance contract by settling with the employee over its objection, thereby forfeiting its right to indemnification. The trial court granted judgment in favor of the employer, and the insurance company appealed. This court affirmed the trial court, stating the following:

> The purpose for paying premiums of insurance coverage is to buy a peace of

mind that when accidents occur, the insured would trust that his insurance company would not renege on its agreement. When an insurance company refuses to provide coverage and at the same time seeks to maintain control of the same litigation, it disclaims liability to indemnify, it creates a frustration of purpose. Such conduct would compel a person of reasonable faculty to cut its costs and settle a lawsuit to avoid the possibility of a higher judgment. *See Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 586, 635 N.E.2d 19. An insurance company which believes and maintains a position that coverage does not exist must make a clean break from the case and should not subject the insured to a guessing game or by its conduct cause the insured to incur more expenses than necessary. After all, whether the insurer can or cannot pay under the policy is not really affected by its decision not to defend the case. *See Aetna Cas. and Sur. Co. v. Buckeye Union Cas. Co.* (1952), 157 Ohio St.385, 105 N.E.2d 568; *see, also, Sanderson*, *supra*.

*Ward* at 137.

**{¶33}** This court reasoned that the insurance company's attempt to "have its cake and eat it created a mouthful" and put the employer in an "untenable position." *Id.* In other words, the insurance company controlled the case, and if it won, the employer was vindicated and neither it nor the employer had any liability. But if it lost, it would claim its defense based on its reservation of rights and have no liability, while the employer's liability "might be more than what [it] would have paid had it settled out of court." *Id.* This court held, based on the "facts and circumstances" of the case, that the employer's "decision to settle without the consent of [the insurance company] was not arbitrary or unreasonable and its rights under the policy [were] not forfeited by its action to settle." *Id.*

**{¶34}** Similarly, here, we find that the Fabrizi entities' decision to settle without Cincinnati Insurance's consent was not arbitrary or unreasonable and, therefore, that its rights under the policy were not forfeited by the consent judgment. In reaching this

conclusion, we note the following two things. First, Jolene maintains that the insurance company issued a reservation of rights letter only relating to claims against Trucking and Paving; the insurance company has not disputed Jolene's claims against Recycling.[6] Second, the insurance company did not file a declaratory judgment during the time the underlying action was being litigated, so that the coverage issue could be resolved. Thus, it created the problem this court discussed in *Ward*: maintaining control of the litigation while at the same time denying coverage.

{¶35} We are further not persuaded by the insurance company's position that Jolene and the Fabrizi entities "cut-off" the fact-finding process in this case by entering into the consent judgment. The Trucking and Paving case was filed in February 2012, the Recycling case was filed in June 2013, and in July 2013, the two cases were consolidated. The taking of discovery depositions started in August 2013, and in the spring of 2014 the Fabrizi entities filed their motion for summary judgment. The docket demonstrates, and as detailed in the factual and procedural history of the case, the parties engaged in extensive efforts to resolve the case out of court. With no resolution reached, the parties were preparing for trial in May 2014 (e.g., the parties filed their trial briefs), and in August 2014, subpoenas for witnesses to appear at trial were issued.

{¶36} Thus, we find that on the facts and circumstances of this case, the consent judgment was not improper. We find the insurance company's contention that the

---

[6]In our review of the record, we found discussion of the reservation of rights letter relative to Trucking and Paving, but an indication from attorney Milligan that he was not aware of, and unable to find, a reservation of rights letter relative to Recycling. *See* record at 47, exhibit A.

judgment breached several provisions of the insurance policy (i.e., the anti-assignment, voluntary payment, cooperation, and no action clauses, which all involve consent on the insurance company's part to settle a claim) to be without merit.

{¶37} Having found that the consent judgment was valid, we turn now to the coverage provided under the policy. Under "Products-completed operations hazard," the policy provided coverage for: "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'" "Your product" was defined as "any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by you, others trading under your name, or a person or organization whose business or assets you have acquired." The policy states that "your product" includes "(1) warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product; and (2) the providing of or failure to provide warnings or instructions."

{¶38} "Your work" was defined under the policy to mean "(1) work or operations performed by you or on your behalf; and (2) materials, parts or equipment furnished in connection with such work or operations." Included in "your work" was "(1) warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and (2) the providing of or failure to provide warnings or instructions."

{¶39} Included in the record for this case is the deposition of Emilio Fabrizi, the president of Trucking and Paving. According to his testimony, Trucking and Paving's

parts manager[7] was responsible for locating and traveling to California to purchase the excavator, which consisted of three parts:  the excavator, a coupling device, and a bucket.  The equipment was purchased in 2008 "as is, with no warranties."  The purchasing notes indicated that there was no safety pin on the equipment and that it had been used for three years without incident.  Fabrizi admitted that there was no set policy or procedure for inspection of the equipment prior to its use, that there had never been a safety pin on the equipment since it came into the Fabrizi entities' possession, and that the bucket, which had been assembled by Trucking and Paving employees, was not properly connected to the machine.[8]  Fabrizi also admitted that there were no warnings posted on, or operating manuals within, the equipment at the time of the incident.

{¶40} Also included in this record is the affidavit of Paul Molnar, who was involved in designing hydraulics for heavy equipment couplers, performing installations for dealers, and providing input as to design for manufacturers.[9]  He averred that he frequently did work for Trucking and Paving, and that an employee of Trucking and Paving contacted him after the purchase of the excavator and asked him to "check it out," which he did.  Molnar averred that when he inspected the excavator it was "partially

---

[7]Although Trucking and Paving and Recycling were separate legal interests, the record demonstrates that the Fabrizi family owned both and they were somewhat intertwined in terms of sharing resources, which included employees.  Thus, although the manager worked for Trucking and Paving, the equipment was purchased by Recycling.

[8]The machine was disassembled in California for shipment and then reassembled in Ohio by Trucking and Paving employees.

[9]Cincinnati Insurance unsuccessfully attempted in the underlying proceedings to have Molnar's affidavit stricken.

assembled * * * with the attached coupler." After his inspection, Molnar informed a "Fabrizi representative" that, although the "coupler was generally in good condition, * * * it lacked the 'safety pin,' which should be installed." Molnar averred that the pin could have been purchased from the company for which he worked.

{¶41} Further, Molnar inspected the equipment again, following Douglas's death, and saw that it did not have the safety pin. He averred that the "operation of the excavator and coupler is dangerous and unsafe without the properly engaged safety pin," and that the "bucket would not have detached from the coupler on [the date of the incident] if the safety pin had been installed as he advised." Molnar also averred that the "absence of the safety pin would be obvious to any experienced operator of the equipment."

{¶42} On this record, we find that there is a genuine issue of material fact as to Cincinnati's duty to indemnify Recycling in this case. We further find that the trial court should have permitted Jolene to conduct further discovery and, therefore, remand this case so that further discovery may be had, which may include further review of the company's claims file.

{¶43} Judgment reversed; case remanded for further proceedings.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

_____

_____
LARRY A. JONES, SR., JUDGE

KATHLEEN ANN KEOUGH, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR