[Cite as *Dayton v. Siff*, 2023-Ohio-4685.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

CITY OF DAYTON                          :
                                        :
        Appellee                        :     C.A. No. 29526
                                        :
v.                                      :     Trial Court Case No. 2021-CVH-6212
                                        :
SARAH SIFF                              :     (Civil Appeal from Municipal Court)
                                        :
        Appellant                       :
                                        :

. . . . . . . . . . .

O P I N I O N

Rendered on December 22, 2023

. . . . . . . . . . .

SARAH SIFF, Appellant, Pro Se

ADAM M. LAUGLE, Attorney, and GREGORY PARKER, Certified Legal Intern, for
Appellee

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-Appellant, Sarah Siff, appeals pro se from a trial court judgment overruling her objections to a magistrate's decision and finding her liable for a civil notice of liability.   The court also rejected Siff's counterclaim against Plaintiff-Appellee, the City of Dayton ("City"), which issued the notice of liability.

{¶ 2} According to Siff, the trial court erred in numerous respects, including: (1) improperly construing Civ.R. 13 and applying statutory procedures that conflict with the Ohio Rules of Civil Procedure; (2) denying Siff's rights to due process, privacy, and equal protection of the law; (3) improperly shifting the burden of proof to Siff in violation of Evid.R. 301; and (4) concluding that the municipal court lacked jurisdiction to order an injunction.

{¶ 3} After considering the record and applicable law, we find no merit in any of Siff's arguments. The court did not err in finding Siff liable on the notice of liability, which alleged that Siff had violated a speed ordinance. Siff admitted she was the registered owner of the photographed vehicle and failed to provide any evidence to rebut the prima facie presumption that she was responsible for the violation.

{¶ 4} The court also did not err in failing to apply various provisions in the Ohio Civil Rules, such as issuing summons and serving a party with a complaint. The statutory scheme in R.C. 4511.092 to R.C. 4511.099, which governs photo enforcement of traffic laws, is a special statutory proceeding and renders these civil rules "clearly inapplicable" under Civ.R. 1(C). Furthermore, contrary to Siff's claim, the trial court did not fail to consider her "counterclaim." The court lacked jurisdiction to issue an injunction, and Siff, as a pro se litigant, was not entitled to attorney fees or to be reimbursed for time spent in litigation (which she lost, anyway). Finally, the City did not violate Siff's rights to due process, privacy, and equal protection of the law.

{¶ 5} For the reasons discussed below, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 6}** On November 24, 2021, the City issued a photo enforcement notice of liability to Siff, informing her that a vehicle registered in her name had been photographed violating Dayton Revised Code General Ordinance ("R.C.G.O.") 71.50(c). Transcript of Court Proceedings ("Tr."), 20-21 and Plaintiff's Ex. 1. The violation was for driving 52 miles per hour in a 35-mile per hour zone in the 2200 block of Smithville Road in Dayton, Ohio, on November 13, 2021, at approximately 9:09 a.m. *Id.* at 21 and Plaintiff's Ex. 1. The vehicle's speed was detected with a mobile speed trailer. *Id.*

**{¶ 7}** In photo enforcement, once photo images are taken, the company that runs the mobile speed trailers sends the City the images for review to make sure the license plate matches the information the license plate reader caught. *Id.* at 22. Dayton Police Officer Diane Thomas was an appointed contact for the public and reviewed the notices of liability for accuracy. *Id.* at 20. Among other things, Thomas made sure the reader had captured the vehicle in the correct lane and had not captured the front plate of an oncoming vehicle. *Id.* at 22.

**{¶ 8}** In this case, Thomas identified the notice of liability at the hearing and confirmed that the vehicle was registered to Siff (a fact Siff did not contest). *Id.* at 20-21 and 31. If Thomas reviewed a camera image and found an error, no notice was issued. *Id.* at 27. A notice of liability is a civil violation, whereas a speeding ticket issued by an officer who stops a car is a minor misdemeanor criminal violation. *Id.* at 24-25.

According to Thomas, the company operating the trailer calibrates the machines on a daily basis. On a quarterly basis, the police capture a sample of ten vehicles for each sensor by using either a laser unit or a radar unit. The police then compare these speeds with the speed that the trailer is capturing. As long as the speeds are the same within two miles per hour, the calibration verification is considered to be good. *Id.* at 28-29.

{¶ 9} The notice sent to Siff stated that an $85 payment was required and must be received by December 24, 2021. *Id.* at Ex. 1. The notice further stated that:

> Unless you file an Affidavit or request a Photo Enforcement Hearing
>
> to contest this violation, as instructed on the back of this page, a civil penalty
>
> of **$85.00 must be paid by the date shown on this notice**."

(Emphasis sic.) *Id.*

{¶ 10} The back of the notice listed three options and stated in all capitals and in bold type that: "FAILURE TO SELECT AN OPTION OR FAILURE TO TAKE ACTION WITHIN 30 DAYS OF THE RECEIPT OF THIS *NOTICE* IS **DEEMED TO BE AN ADMISSION OF LIABILITY AND A WAIVER TO CONTEST THE VIOLATION**." Plaintiff's Ex. 1 at p. 2. The listed options were as follows: (1) paying the amount due by the due date (in this case, December 24, 2021) to the Dayton Municipal Court, with a $25 late fee for payment after the due date; (2) asking the court for a hearing within 30 days after receipt of the notice; or (3) completing, notarizing, and filing an affidavit with the court within 30 days after receipt of the notice. In this last situation, the affidavit would designate another driver who was responsible or the affidavit would report other situations, such as that the vehicle or plates had been stolen or that the vehicle had been

sold or leased at the time of the traffic violation.  *Id.*

{¶ 11} Siff filed a notice with the municipal court requesting a hearing; the court then set a photo enforcement hearing for January 27, 2022.[1]  On January 21, 2022, Siff filed a motion for a continuance, which the court denied on January 25, 2022.   However, the case was apparently continued because the court filed an order on February 2, 2022, setting the hearing for February 22, 2022.   In the meantime, Siff filed a "pretrial motion" on January 28, 2022, asking the court to issue an "amended summons" correcting the caption of the case.

{¶ 12} On February 18, 2022, Siff filed a document entitled "Answer and Counterclaim."   The counterclaim asserted in Count I that the City was liable to Siff for time spent defending herself and protecting the public interest.   Count II alleged that the court should enjoin the City from "issuing to vehicle owners any further photo-enforcement-complaints and demands for payment until such time as the citation and hearing process is explicitly sanctioned by the municipal code and complies with both

---

[1] Siff's signed request for an appeal was time-stamped December 29, 2022, by the Dayton Municipal Court, Central Payments, which is where appeals are to be filed.   *See* Plaintiff's Ex. 1.   This appears to have been more than 30 days after Siff received the notice of liability.   Siff did not say during the court hearing when she received the notice, but the brief she filed with the trial court did specify such a date.   In her brief, Siff stated that, "On Nov. 24, the Defendant was at home when she received and opened a printed 'notice of liability' from the Police Department Processing Center in Latham, Md., a document labeled as a 'notice for violating the traffic code' and represented as issued by the plaintiff, City of Dayton."   Defendant's Brief in Support of Counterclaim (Apr. 14, 2022), p. 2.   In this situation, R.C. 4511.98(A)(5) provides that "failure to request a hearing within this time period [30 days after receipt] constitutes a waiver of the right to contest the violation and ticket, and is deemed to constitute an admission of liability and waiver of the opportunity to contest the violation."   Given Siff's statement in her brief, she appears to have admitted liability and waived her right to challenge the violation. Nonetheless, the trial court did not reject Siff's appeal on this basis.

state law and the rules of civil procedure." Answer and Counterclaim, p. 2.

{¶ 13} On February 24, 2022, the court reset the hearing to March 15, 2022; the hearing was then held on that date. At the hearing, a magistrate heard the testimony recounted above. During the hearing, Siff admitted that she had received the notice. She testified that when she received it, she had a "visceral reaction" to doing something that felt as it if were infringing on her right not to account for herself. Tr. at 30. She further stated that she did not recall if she or her husband had been driving the car that day. *Id.*

{¶ 14} At the end of the hearing, the magistrate allowed Siff 30 days to file a written argument and also gave the City a chance to respond. *Id.* at 34. Siff filed a trial brief on April 14, 2022, but the City did not respond before the magistrate's decision. On June 2, 2022, the magistrate filed a decision dismissing the counterclaim. The magistrate further rejected a privacy claim Siff raised in her brief, concluding that there was no privacy violation in reading a license plate. Magistrate's Decision, p. 2. The magistrate further found that Siff had had the right to designate another driver as responsible for the notice of liability if she was not the operator at the time of the violation. However, Siff chose not to do so, and the magistrate found her liable, since there was no designation or other testimony to rebut the presumption that the registered owner (Siff) was liable. *Id.* In a separate decision filed the same day, the magistrate found Siff liable and assessed the $85 penalty plus $40 in court costs. On that day, the judge signed a judgment entry adopting the magistrate's decision.

{¶ 15} On June 14, 2022, Siff filed objections to the magistrate's decision. On the

same day, the City filed a response to the counterclaim as well as a trial brief. On June 24, 2022, the City also filed a response to Siff's objections. Subsequently, Siff filed a notice of appeal on July 7, 2022, before the hearing transcript was filed and before the trial court had a chance to rule on the objections.

{¶ 16} We filed a show cause order on July 27, 2022, since the notice of appeal had been filed more than 30 days after the trial judge had signed the judgment entry. On further review, we remanded the case to the trial court because the court had not resolved the objections to the magistrate's decision. *See Dayton v. Siff*, 2d Dist. Montgomery No. 29526 (Aug. 12, 2022). The hearing transcript was then filed on August 24, 2022.

{¶ 17} On March 28, 2023, the trial court filed a judgment entry adopting the magistrate's decision, finding Siff liable, and ordering her to pay $85.00. As a result, we returned the case to our docket and lifted our stay. *Dayton v. Siff*, 2d Dist. Montgomery No. 29526 (Order, Apr. 3, 2023). We also allowed Siff to amend her notice of appeal to include the March 28, 2023 judgment, and she did so.

## II. Alleged Error in Dismissing the Counterclaim

{¶ 18} Siff's first assignment of error states that:

> The Trial Court Erred by Dismissing Appellant's Counterclaim in Contradiction of Civ.R. 13, Magistrate's Decision, Page 1; Judgment Entry, Page 2.

{¶ 19} Under this assignment of error, Siff contends that the statutory scheme in R.C. 4511.096, R.C. 4511.097, and R.C. 4511.098, and the provisions in R.C.G.O.

70.121 violate various provisions of the Ohio Rules of Civil Procedure, including Civ.R. 13, Civ.R. 3(A), Civ.R. 4, Civ.R. 4.1, Civ.R. 14.[2]  Siff further argues that the statutory scheme and the City's code section governing photo enforcement (R.C.G.O. 70.121) conflict with Article IV, Section 5(B) of the Ohio Constitution, which gives the Supreme Court of Ohio authority to prescribe rules that prevail over contradictory laws.   Before we address these arguments, we will outline the standard of review as well as general background of the photo-enforcement traffic laws.

A.   Standard of Review

{¶ 20} Trial court decisions adopting a magistrate's decision are reviewed for abuse of discretion.   *E.g., Pacetti's Apothecary, Inc. v. Rebound Bracing & Pain Solutions, LLC*, 2023-Ohio-93, 206 N.E.3d 61, ¶ 18 (2d Dist.), citing *Holfinger v. Stonespring/Carespring, L.L.C.*, 2d Dist. Montgomery No. 27091, 2016-Ohio-7982, ¶ 33. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable."   *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).   "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary."   *Id.*   "A decision is unreasonable if there is no sound reasoning process that would support" it.   *Id.*

---

[2] We note that Siff's appellate brief has listed certain "issues" as related to various assignments of error. *See* Appellant's Brief, p. 5-6.  However, the described issues do not always correspond with the assignments of error.   As a result, we will address some issues here that are listed as part of the second assignment of error.   The issues in question more properly fit within the first assignment of error, which relates to whether the Ohio Rules of Civil Procedure applied.

### B. General Background of Photo-Enforcement Traffic Laws

{¶ 21} For a number of years, various Ohio jurisdictions have adopted regulations allowing photo-enforcement of traffic laws. During that time, challenges to these regulations have made their way through Ohio courts. The legislature has also enacted laws permitting photo-enforcement, and over time it has amended both these laws and other laws concerning whether enforcement may be done administratively or through the court system.

{¶ 22} "In 2002, Dayton enacted an ordinance permitting its police department to institute a program using traffic cameras to civilly enforce red-light traffic violations to conserve police resources and to reduce traffic violations and accidents. Prior to installing the traffic cameras, Dayton conducted studies to identify those intersections that had a high number of traffic accidents. Almost immediately after installing the traffic cameras, the number of violation-related accidents decreased. Because of the success Dayton had with the red-light cameras, Dayton enacted an amended ordinance in 2010 to use traffic cameras to reduce speeding violations." *Dayton v. State*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, ¶ 2.

{¶ 23} In 2008, the Supreme Court of Ohio held that "[a]n Ohio municipality does not exceed its home rule authority when it creates an automated system for enforcement of traffic laws that imposes civil liability upon violators, provided that the municipality does not alter statewide traffic regulations." *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, syllabus.

**{¶ 24}** On December 18, 2014, the Supreme Court of Ohio further held that "Ohio municipalities have home-rule authority to establish administrative proceedings, including administrative hearings, related to civil enforcement of traffic ordinances, and that these administrative proceedings must be exhausted before offenders or the municipality can pursue judicial remedies." *Walker v. Toledo*, 143 Ohio St.3d 420, 2014-Ohio-5461, 39 N.E.3d 474, ¶ 3. At the time, Toledo's municipal ordinances contained provisions for the city to issue a notice of liability to registered owners, who could then file an appeal that would be heard in an administrative process established by the police department. Decisions in the city's favor could then be enforced by a civil action, which under R.C. 2506.01, would be in the common pleas court for the county. *Id.* at ¶ 5-8. The issue in *Walker* was whether Toledo had improperly divested the municipal court of jurisdiction. *Id.* at 10-11 and 13. As noted, the Supreme Court of Ohio concluded that this exercise of home rule was proper.

**{¶ 25}** Dayton's photo-enforcement provisions are contained in R.C.G.O. 70.121, which was enacted in 2002. It has been amended several times, including in December 2014 and May 2017. As currently constituted, R.C.G.O. 70.121(F) provides for an administrative process similar to the one involved in *Walker*, except that an appeal from the hearing officer's decision is to the Dayton Municipal Court rather than to the common pleas court. R.C.G.O. 70.121(F)(5).

**{¶ 26}** "[A] new state law became effective in March 2015, 2014 Am.Sub.S.B. No. 342 ('S.B. 342'). S.B. 342 adopted and amended several Revised Code provisions regulating local authorities' use of automated traffic-enforcement programs. It

authorizes local authorities to use photo-monitoring devices for traffic-law violations, subject to certain conditions and regulations." *Dayton*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, at ¶ 4. S.B. 342 was approved on December 19, 2014, and was effective in March 2015. *See* Am.Sub.S.B. 243, 2014 Ohio Laws 193.

{¶ 27} As part of S.B. 342, the legislature also modified the jurisdiction of municipal courts under R.C. 1901.20(A)(1). Before the amendments (with certain exceptions that are irrelevant here), a municipal court had "jurisdiction of the violation of any ordinance of any municipal corporation within its territory * * * and of the violation of any misdemeanor committed within the limits of its territory." Under the 2015 amendments, a further jurisdictional provision was created for situations where "the violation is a civil violation based upon evidence recorded by a traffic law photo-monitoring device and issued pursuant to division (B)(3) of section 4511.093 of the Revised Code." *See* Am.Sub.S.B. 243, 2014 Ohio Laws 193. This amendment also added subsection (C)(2) to R.C. 1901.20, by stating, "A municipal court has jurisdiction over an appeal of a written decision rendered by a hearing officer under section 4511.099 of the Revised Code if the hearing officer that rendered the decision was appointed by a local authority within the jurisdiction of the court." *Id.* The same change was made to county court jurisdiction for appeals of decisions by hearing officers, by adding subsection (C) to R.C. 1907.02. *Id.*

{¶ 28} In *Dayton*, which was issued on July 26, 2017, the Supreme Court of Ohio held various provisions of the photo-enforcement state law unconstitutional as limiting Dayton's "home rule authority without serving an overriding state interest." *Id.* at ¶ 1. These provisions included "R.C. 4511.093(B)(1), which requires that a law-enforcement

officer be present at the location of a traffic camera"; "R.C. 4511.0912, which prohibits the municipality from issuing a fine to a driver who is caught speeding by a traffic camera unless that driver's speed exceeds the posted speed limit by 6 m.p.h. in a school or park zone or 10 m.p.h. in other areas"; and "R.C. 4511.095, which directs the municipality to perform a safety study and a public-information campaign prior to using a camera."  *Id.*

{¶ 29} Subsequently, in April 2019, the legislature passed H.B. 62, which again changed jurisdictional parameters.   This act was effective on July 3, 2019.   At that time, R.C. 1901.18 was amended to give municipal courts original jurisdiction "[i]n every civil action concerning a violation of a state traffic law or a municipal traffic ordinance." Am.Sub.H.B. 62, 2019 Ohio Laws 2 (adding R.C. 1901.18(A)(14)).   Likewise, R.C. 1901.20(A)(1) was amended to state that:

> The municipal court has jurisdiction to hear misdemeanor cases committed within its territory and has jurisdiction over the violation of any ordinance of any municipal corporation within its territory, including *exclusive* jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance.

(Emphasis added.)   Am.Sub.H.B. 62, 2019 Ohio Laws 2.

{¶ 30} Pursuant to the 2019 amendments, R.C. 1901.20(C)(2) (referring to appeals from decisions of hearing officers) was eliminated, and subsection (D) was added.   R.C. 1901.20(D) stared that, "As used in this section, 'violation of a state traffic law or a municipal traffic ordinance' includes, but is not limited to, *a traffic law violation recorded by a traffic law photo-monitoring device, as defined in section 4511.092 of the*

*Revised Code.*"   (Emphasis added.)   *Id.*

{¶ 31} Likewise, R.C. 1907.02(C) was amended in 2019 to eliminate any reference to appeals from decision of hearing officers.   Instead, this subsection gave county courts "exclusive jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance, if the violation is committed within the limits of the court's territory."   *Id.*   Further, R.C. 1907.031 was amended to add subsection (A)(8), which gave county courts original jurisdiction "[i]n every civil action or proceeding concerning a violation of a state traffic law or a municipal traffic ordinance."   *Id.*   Both the county court jurisdictional sections and R.C. 1901.18 were also amended to indicate that, as used in these sections, " 'violation of a state traffic law or a municipal traffic ordinance' has the same meaning as in section 1901.20 of the Revised Code."   *Id.*, adding R.C. 1901.18(C), R.C. 1907.02(D), and R.C. 1901.031(C).

{¶ 32} Thus, after the amendments became effective on July 3, 2019, no administrative system could be used to resolve violations of photo enforcement laws. Instead, jurisdiction resided in either municipal or county courts.

{¶ 33} To date, none of these jurisdictional statutes has been further amended. In June 2020, the Supreme Court of Ohio granted a writ of prohibition to prevent "the city of Toledo, from conducting an administrative hearing to adjudicate [the relator's] liability for violating a municipal traffic ordinance."   *State ex rel. Magsig v. Toledo*, 160 Ohio St.3d 342, 2020-Ohio-3416, 156 N.E.3d 899, ¶ 1.   Although Toledo argued that the court's prior decision in *Walker* lacked language barring use of an administrative scheme, the court noted that "*Walker* was made in the context of a different statutory scheme and is

no longer applicable." *Id.* at ¶ 10, referencing *Walker*, 143 Ohio St.3d 420, 2014-Ohio-5461, 39 N.E.3d 474.

{¶ 34} The court stressed that after the 2019 amendments, "[t]he current version of R.C. 1901.20(A)(1) clearly and unambiguously reserves for municipal courts exclusive authority to adjudicate every civil traffic-law violation. And that statutory grant of jurisdiction 'cannot be impaired or restricted by any municipal charter or ordinance provision.' " *Id.* at ¶ 11, quoting *Cupps v. Toledo*, 170 Ohio St. 144, 151, 163 N.E.2d 384 (1959).

{¶ 35} Although Dayton did not amend R.C.G.O. 70.121 after the 2020 decision in *Magsig*, the effect of the 2019 amendments and the decision in *Magsig* was that the City could no longer use administrative hearings; instead, the Dayton Municipal Court had jurisdiction over violations of the photo-enforcement laws.

{¶ 36} As part of the 2019 amendments in S.B. 62, the legislature also amended R.C. 4511.096. Previously, this statute provided, regarding photo enforcement, that "[w]ithin thirty days of the traffic law violation, the local authority or its designee may issue and send by regular mail a ticket charging the registered owner with the violation. The ticket shall comply with section 4511.097 of the Revised Code." Consistent with the jurisdictional changes, the following sentence was added to R.C. 4511.096(C):

If the local authority mails a ticket charging the registered owner with the violation, the local authority shall file a certified copy of the ticket with the municipal court or county court with jurisdiction over the civil action.

Am.Sub.H.B. 62, 2019 Ohio Laws File 2. However, the statutory provision for sending

the ticket by regular mail to vehicle owners was not changed.

**{¶ 37}** In March 2021, our court concluded that "R.C. 4511.096(C) was not a general law and was an unconstitutional attempt to limit the legislative home-rule powers of municipalities" due to a lack of an overriding state interest and because "on its face, the statute arbitrarily attempts to control the procedure a municipality must follow when issuing, mailing, and filing citations for violators without sufficiently serving an overriding state interest." *Dayton v. State*, 2021-Ohio-967, 170 N.E.3d 502, ¶ 40 (2d Dist.). Our opinion further noted that the provisions in R.C. 4511.096(C) "fail to prescribe a rule of conduct on citizens generally; rather, the contested provision is solely directed at local authorities." *Id.* at ¶ 41.

**{¶ 38}** However, in June 2022, the Supreme Court of Ohio vacated our judgment and remanded the case for consideration in light of the court's decision in *Newburgh Hts. v. State*, 168 Ohio St.3d 513, 2022-Ohio-1642, 200 N.E.3d 189. *See Dayton v. State*, 167 Ohio St.3d 565, 2022-Ohio-2073, 195 N.E.3d 130, ¶ 1. In *Newburgh*, the court found that the Home Rule Amendment did not prohibit "the General Assembly from enacting statutes that (1) reduce a municipality's share of the state's local-government fund by an amount equal to the fines collected based on citations arising from the use of traffic cameras and (2) require a municipality to pay an advance deposit of costs and fees when commencing a civil action to enforce a citation issued using an automated traffic-camera system." *Newburgh* at ¶ 1 and 7.

**{¶ 39}** While *Newburgh* did not address R.C. 4511.096(C), we concluded on remand that based on *Newburgh's* rationale, "R.C. 4511.096(C) does not violate the

Home Rule Amendment. Although the certified copy requirement 'may make litigating violations based on traffic cameras more expensive for municipalities,' the requirement 'does not conflict with local law, because it does not prohibit municipalities from using cameras to enforce their traffic laws.' " *Dayton v. State*, 2022-Ohio-4412, 203 N.E.3d 758, ¶ 22, quoting *Newburgh* at ¶ 33. We further said that "[t]herefore, the certified copy requirement 'does not limit or otherwise infringe upon any municipal authority granted by the Home Rule Amendment,' and it was error for the trial court to find that it did in the instant case." *Id.*, quoting *Newburgh* at ¶ 33.

{¶ 40} *Newburgh* was the last decision of the Supreme Court of Ohio in this area, other than a December 2022 decision in which the court found that "[b]y paying their civil fines and not disputing their liability under CCO 413.031 [a Cleveland, Ohio photo enforcement law], appellees admitted their liability for their traffic violations recorded by the city's automated-traffic-enforcement cameras. That ended the case between appellees and the city as to those incidents. Res judicata prevents a subsequent lawsuit based on CCO 413.031's inapplicability to vehicle lessees." *Lycan v. Cleveland*, 171 Ohio St.3d 550, 2022-Ohio-4676, 218 N.E.3d 913, ¶ 38.

{¶ 41} With this background in mind, we turn to Siff's arguments.

## C. Discussion

{¶ 42} As noted, Siff has made numerous complaints about the procedures here. Essentially, Siff's argument is that based on the Ohio Rules of Civil Procedure, the notice of liability should have been treated as a "complaint"; a summons should have been

issued; she should have been served by certified mail; and her "counterclaim" should have been considered. Siff further contends that requiring vehicle owners to furnish an affidavit concerning another driver's liability improperly contradicts Civ.R. 14, which provides a specific procedure for shifting liability to a third party.

{¶ 43} The statutory scheme for traffic law photo-monitoring is contained in R.C. 4511.092 through R.C. 4511.0914. As pertinent here, a law enforcement officer examines the evidence of recorded violations, determines if a violation has occurred, and locates the registered owner of the depicted vehicle. R.C. 4511.096(A). After this is done:

> Within thirty days of the traffic law violation, the local authority or its designee may issue and send by regular mail a ticket charging the registered owner with the violation. The ticket shall comply with section 4511.097 of the Revised Code. If the local authority mails a ticket charging the registered owner with the violation, the local authority shall file a certified copy of the ticket with the municipal court or county court with jurisdiction over the civil action.

R.C. 4511.096(C).

{¶ 44} R.C. 4511.097(B) also specifies that the local authority (here, the City) is to send the ticket by ordinary mail. In addition, this statute outlines items that are required to be on the document. *See* R.C. 4511.097(B)(1)-(11). The notice of liability sent to Siff complied with these requirements. *See* Plaintiff's Ex. 1. Once the ticket or notice has been sent, R.C. 4511.098 provides the registered owner with various options, including

paying the ticket, submitting an affidavit to the court claiming another party was operating the vehicle or that the vehicle or license plates were stolen, or contesting the ticket by filing a written request for a court hearing. *See* R.C. 4511.098(A)(1)-(5).

**{¶ 45}** Here, the trial court concluded that the notice of liability issued was not a complaint under Civ.R. 3(A) because it was governed by either R.C.G.O. 70.121 or by the state law as found in the statutes outlined above. Judgment Entry Adopting Magistrate's Decision (Mar. 28, 2023) ("Judgment Entry"), p. 2. Whether the notice of liability is considered a complaint is essentially irrelevant, as R.C. 4511.096(C) specifically refers to a certified copy of the ticket being filed in a court with jurisdiction over "the civil action." Civ.R. 2 states that "[t]here shall be only one form of action, and it shall be known as a civil action." Thus, the matter was a "civil action," and the real question is whether it was governed by the Ohio Civil Rules.

**{¶ 46}** "Article IV, Section 5(B) provides: 'The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. * * * All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.' This constitutional provision recognizes that 'where conflicts arise between the Civil Rules and the statutory law, the rule will control the statute on matters of procedure and the statute will control the rule on matters of substantive law.' " *Ferguson v. State*, 151 Ohio St.3d 265, 2017-Ohio-7844, 87 N.E.3d 1250, ¶ 20, quoting *Boyer v. Boyer*, 46 Ohio St.2d 83, 86, 346 N.E.2d 286 (1976).

**{¶ 47}** However, the "preemptive reach" of the Civil Rules is limited by Civ.R. 1(C).

*Id.* at ¶ 21. As pertinent here, Civ.R. 1(C) states that:

> These rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * in all other special statutory proceedings; provided, that where any statute provides for procedure by a general or specific reference to all the statutes governing procedure in civil actions such procedure shall be in accordance with these rules.

{¶ 48} "There are two considerations in determining whether the Civil Rules do not apply: whether the procedural statute governs a special statutory proceeding and whether that statute renders the civil rule at issue 'clearly inapplicable.' " *Ferguson* at ¶ 21. A "special proceeding" is generally defined as "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. 2505.02(A)(2). Here, the photo-enforcement scheme qualifies as a special proceeding because it was created by statute and was not denoted as an action in law or suit in equity before 1853.

{¶ 49} As to the second consideration, in Ohio, the philosophy of courts is that " '(t)he civil rules should be held to be clearly inapplicable only when their use will alter the basic statutory purpose for which the specific procedure was originally provided in the special statutory action.' " *Price v. Westinghouse Elec. Corp.*, 70 Ohio St.2d 131, 133, 435 N.E.2d 1114 (1982), quoting *State, ex rel. Millington, v. Weir*, 60 Ohio App.2d 348, 349, 397 N.E.2d 770 (10th Dist.1978). Considering this point, we note that the November 14, 2014 Ohio Legislative Service Commission ("LSC") Bill Analysis for the 2014 law (S.B. 342) does not specify a particular statutory purpose for the laws allowing

photo-enforcement, other than stating, "The bill generally authorizes a local authority, meaning a county, township, or municipal corporation, to utilize traffic law photo-monitoring devices for the purpose of detecting traffic law violations, subject to specified conditions and required procedures." (Footnote omitted.) *Id.* at p. 7.

**{¶ 50}** Likewise, the 2019 amendments focus more on returning jurisdiction to the courts rather than a more specific statutory focus. The April 2, 2019 LSC Final Bill Analysis for the 2019 Law (H.B. 62) first noted in the context of traffic camera law that "[t]he Ohio Constitution gives the General Assembly the authority to both create courts that are inferior to the Ohio Supreme Court and to determine the power and jurisdiction of those courts (Ohio Constitution Article IV, Sections 1 and 18)." *Id.* at p. 27. The LSC Analysis then mentioned the decision of the Supreme Court of Ohio in *Walker*, 143 Ohio St.3d 420, 2014-Ohio-5461, 39 N.E.3d 474, which held that municipal courts did not have exclusive jurisdiction and approved home rule authority to establish administrative proceedings. *Id.* The Analysis noted an intent to return exclusive jurisdiction to municipal and county courts. *Id.* Further, the Analysis remarked that:

> The act eliminates the process that required a hearing officer to conduct an administrative hearing when a person contested a ticket for a civil traffic violation that was based on a traffic camera recording. Rather than contesting a ticket in an administrative hearing, the act requires the person to contest it in either the municipal or county court with jurisdiction over the civil action, where the local authority bears most of the costs (see below). It makes conforming changes throughout the laws governing

traffic cameras to reflect this change.

2019 LSC Final Bill Analysis at p. 28.

{¶ 51} Regarding costs, the Analysis further stated that:

The act requires a municipal corporation, county, or township to file a certified copy of a ticket charging a vehicle owner with a civil traffic violation based on a traffic camera recording with the municipal or county court having jurisdiction. Additionally, when the local authority files the certified copy, the court with jurisdiction must require the local authority to make an advance deposit of all court costs and fees that apply to the civil action, except for tickets issued for school zone violations. Generally, the court retains the advance deposit, regardless of which party prevails in the civil action. In most of those civil actions, the court is not permitted to charge the owner or the driver who committed the violation any court costs or fees. If the owner or driver contests the ticket and does not prevail in the civil action, that owner or driver is only responsible for paying the required civil penalty.

*Id.*

{¶ 52} The 2019 LSC Analysis did not discuss the notification procedure but, as stressed, the 2019 amendments left in place the existing requirement that the local authority send notices of liability to affected owners by *regular mail.* As amended, the statutory scheme did not indicate any requirement for further notifying an affected party once the certificate was filed with the municipal or county court. It would make little

sense to do so, since the party already receiving notice was required to do one of three things: pay the court, file a hearing request, or submit an affidavit directing blame to another party. In this context, Siff's complaint that she was improperly being requested to "commence an action" under Civ.R. 3(A) when she had no interest in doing so is frivolous. Siff was not being asked to initiate an action; she was being asked to submit an appeal from a notice of liability, and Civ.R. 3(A) was "clearly inapplicable."

{¶ 53} Given these points, applying the Civil Rules for issuing summons and service and for commencement of actions would contradict the operation and purpose of the statutory scheme for enforcement, and the Civil Rules were clearly inapplicable. That is not the end of the inquiry, however. In *Price*, the Supreme Court of Ohio commented in the context of applying the exception in Civ.R. 1(C) that "it is clear that in certain instances some of the Civil Rules will be applicable while others will be clearly inapplicable." *Price*, 70 Ohio St.2d at 132, 435 N.E.2d 1114. Thus, even though the summons and service rules did not apply, Civ.R. 13 could possibly be different.

{¶ 54} Civ.R. 13(A) provides that:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

{¶ 55} However, we need not further address this point. Even if counterclaims are permissible, the trial court did not preclude Siff from having her "counterclaim"

considered. During the hearing, the magistrate noted that the proceedings were "sort of quasi-administrative" and that Siff's filing was improper because there was nothing legally to counter. Tr. at 5. The magistrate further stated that Siff could not sue the City in a counterclaim in a case like this but could file a small claims action or general lawsuit if she desired. *Id.* However, later in the hearing, the magistrate stated that it had not yet written the decision on the counterclaim; the magistrate, therefore, gave Siff the opportunity to file a further document discussing the counterclaim. *Id.* at 34-35. As noted, Siff did submit a written brief on the counterclaim, so she was not precluded from having the court consider it.

{¶ 56} In its decision, the magistrate rejected Siff's counterclaims on the merits, indicating that it did not have authority to change the law. The magistrate also rejected Siff's claim that her right of privacy had been violated. Magistrate's Decision (June 2, 2022), p. 1-2. In resolving Siff's objections to the magistrate's decision, the trial court found the arguments that Siff presented at the hearing and her supplemental arguments to be without merit. Judgment Entry at p. 2. In addition, the court found that it could not issue the injunctive remedy that Siff sought because it was not within the power and authority of the court. *Id.* Therefore, Siff was not precluded from filing anything she desired, and her claims were considered; they were just not successful.

{¶ 57} Siff's final point about the Ohio Civil Rules is that R.C. 4115.098(A)(2) contradicts Civ.R. 14 because the statute provides a "substantially leaner process for shifting liability to a third party." Appellant's Brief at p. 17-18.

{¶ 58} As relevant here, Civ.R. 14(A) provides in pertinent part that:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. * * * The person served with the summons and third-party complaint, hereinafter called the third-party defendant, shall make his defenses to the third-party plaintiff's claim as provided in Rule 12 and his counterclaims against the third-party plaintiff and cross-claims against other third-party defendants as provided in Rule 13. The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert his defenses as provided in Rule 12 and his counterclaims and cross-claims as provided in Rule 13.

{¶ 59} R.C. 4511.098 states, in pertinent part, that:

(A) A person or entity who receives a ticket for a civil violation sent in compliance with section 4511.097 of the Revised Code shall elect to do one of the following:

* * *

(2)(a) Within thirty days after receipt of the ticket, provide the municipal court or county court with jurisdiction over the civil action with either of the following affidavits:

(i) An affidavit executed by the registered owner stating that another person was operating the vehicle of the registered owner at the time of the violation, identifying that person as a designated party who may be held liable for the violation, and containing at a minimum the name and address of the designated party;

(ii) An affidavit executed by the registered owner stating that at the time of the violation, the motor vehicle or the license plates issued to the motor vehicle were stolen and therefore were in the care, custody, or control of some person or entity to whom the registered owner did not grant permission to use the motor vehicle. In order to demonstrate that the motor vehicle or the license plates were stolen prior to the traffic law violation and therefore were not under the control or possession of the registered owner at the time of the violation, the registered owner shall submit proof that a report about the stolen motor vehicle or license plates was filed with the appropriate law enforcement agency prior to the violation or within forty-eight hours after the violation occurred.

(b) A registered owner is not responsible for a traffic law violation if, within thirty days after the date of mailing of the ticket, the registered owner furnishes an affidavit specified in division (A)(2)(a)(i) or (ii) of this section to

the court with jurisdiction in a form established by the court and the following conditions are met:

(i) If the registered owner submits an affidavit as specified in division (A)(2)(a)(i) of this section, the designated party either accepts liability for the violation by paying the civil penalty or by failing to request a court hearing within thirty days or is determined liable in a court hearing;

(ii) If the registered owner submits an affidavit as specified in division (A)(2)(a)(ii) of this section, the affidavit is supported by a stolen vehicle or stolen license plate report as required in that division.

{¶ 60} There is virtually no difference in the practical operation of Civ.R. 14 and R.C. 4511.098(A). In either situation, an allegedly liable party is allowed to bring in a third party who may be responsible. If a third-party complaint is not dismissed on various grounds like failure to state a claim (Civ.R. 12(B)(6)) or upon summary judgment, liability will be decided at trial. Likewise, under R.C. 4511.098, if the other alleged responsible party does not accept liability for a photo-enforcement violation, that matter will be decided at a court hearing.

{¶ 61} Siff's final point is that even if the statutes were constitutionally sufficient, the City's notice did not contain information required by R.C. 4511.097(B)(10), and the notice incorrectly referenced the statute by stating under the section relating to affidavits that "R.C. 4511.096 provides that it is sufficient evidence for this violation that the person registered as the owner of the vehicle was the person who was operating the vehicle at the time of the violation." This was followed by a statement in the notice that liability may

be removed if the registered owner provides an affidavit establishing that someone else was responsible.   Plaintiff's Ex. 1 at p. 2.

**{¶ 62}** As to the first point, R.C. 4511.097(B) contains various information about content required for the notice.   R.C. 4511.097(B)(10) states that the notice must include: "Information advising the person or entity alleged to be liable of the options prescribed in section 4511.098 of the Revised Code, specifically to include the time, place, and manner in which the person or entity may appear in court to contest the violation and ticket and the procedure for disclaiming liability by submitting an affidavit to the municipal court or county court as prescribed in that section."   Siff's argument in this regard is without merit, as the notice complies with these requirements.   *See* Plaintiff's Ex. 1.

**{¶ 63}** Concerning the second point, Siff made this argument during the hearing. At that point, the magistrate informed Siff that while the notice would be sufficient to establish liability, this was a prima facie presumption that a party could rebut.   Tr. at 12-13.   This was correct.   R.C. 4511.096(B) states that "[t]he fact that a person or entity is the registered owner of a motor vehicle is prima facie evidence that that person or entity is the person who was operating the vehicle at the time of the traffic law violation."

**{¶ 64}** Whether or not the City's form could have been more precisely worded is irrelevant.   The appropriate standard was applied to Siff and she was well aware of it. She was not held to a different standard.

**{¶ 65}** Based on the preceding discussion, Siff's first assignment of error is without merit and is overruled.

### III. Due Process, Right to Privacy, and Equal Protection

{¶ 66} Siff's second assignment of error states that:

The Trial Court Erred by Ruling That All Arguments Raised in Appellant's Filings Were Meritless, Refusing to Address Appellant's Many Objections to Appellee's Procedures Under Ohio Constitution and Rules of Court, Thereby Violating Her Right to Due Process[.] * * *

{¶ 67} Under this assignment of error, Siff raises several matters to support her claim that she was denied due process and other rights. While acknowledging that she was able to question the City's witness at the hearing and was given "ample opportunity" to present her arguments verbally and in writing, Siff claims that her arguments were never given any actual consideration. Appellant's Brief at p. 20. Siff further argues that the trial court was biased, that the magistrate was her "adversary" at trial, that the name of the judge who initially adopted the magistrate's decision was illegible, that her brief to the police department employee listed as the City's contact in trial court records was returned as undeliverable, and that her case was not listed on the court's public docket, which violated a manifest public interest in Siff's filings. *Id.* at p. 20-21. (Many of Siff's claims are not part of the record but constitute her statements about out-of-court events that occurred.) Siff also raises issues relating to her "right to privacy" and to equal protection. We will begin our discussion with due process.

### A. Due Process

{¶ 68} In the context of due process, Siff did not cite any legal decisions but briefly

referred to Article I, Section 16 of the Ohio Constitution. This provision states that, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." The Supreme Court of Ohio has said that "[u]nder a plain reading, the constitutional provision does not speak to 'due process' at all but, rather, to an individual's right to access the court system and to seek a remedy. For many years, however, we have treated the provision as equivalent to the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Stolz v. J & B Steel Erectors, Inc.*, 155 Ohio St.3d 567, 2018-Ohio-5088, 122 N.E.3d 1228, ¶ 12.

{¶ 69} Due process claims involve both procedural and substantive due process. "A procedural-due-process challenge concerns the adequacy of the procedures employed in a government action that deprives a person of life, liberty, or property." *Ferguson v. State*, 151 Ohio St.3d 265, 2017-Ohio-7844, 87 N.E.3d 1250, ¶ 42. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Here, Siff concedes she was given a chance to be heard, including the ability for cross-examination, but simply disagrees with the result. Having reviewed the entire record, we find no basis for a procedural due process claim, as Siff was given a full opportunity to make her claims.

{¶ 70} " 'Substantive due process is "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the

procedures employed." ' " *Granato v. Davis*, 2d Dist. Montgomery No. 26171, 2014-Ohio-5572, ¶ 75, quoting *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir.2014). " 'It protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that "shock the conscience." ' " *Id.*, quoting *Bell v. Ohio State Univ.,* 351 F.3d 240, 249-250 (6th Cir.2003). " 'It also protects the right to be free from "arbitrary and capricious" governmental actions, which is another formulation of the right to be free from conscience-shocking actions.' " *Id.*, quoting *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir.2003).

{¶ 71} Nothing Siff raises even remotely reaches the level of actions that shock the conscience. From our reading of the transcript, the magistrate treated Siff with courtesy and patience, even though most of Siff's arguments were incorrect. To the extent that Siff is asserting judicial bias, "[t]he term, 'biased or prejudiced,' when used in reference to a judge before whom a cause is pending implies a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶ 72} While we lack the ability to decide if judges should be disqualified, " '[s]ome courts have recognized a distinction, * * * where the question is not prospective disqualification or recusal but whether the judge's conduct during trial deprived the defendant of his due process rights.' " *Dibert v. Carpenter*, 2018-Ohio-1054, 98 N.E.3d

350, ¶ 72 (2d Dist.), quoting *State v. Evans*, 2d Dist. Montgomery No. 27178, 2017-Ohio-8184, ¶ 10, fn.3. Again, having examined the record, we find no evidence of such conduct and find no due process violation.

## B. Invasion of Right of Privacy

**{¶ 73}** According to Siff, delivery of the notice of liability intruded upon her right to privacy and "seclusion" because she opened the notice at home with her family and was outraged by the fact that the City "aimed unlawfully to peer into family schedules and personal texts." Appellant's Brief at p. 22. Siff's argument in this regard is that in order to discover whether she or her husband was driving at the time of the alleged violation, she would have had to consult her text messages for that day. This argument is frivolous.

**{¶ 74}** As a preliminary point, Siff did not raise this issue as a "counterclaim"; she simply mentioned at the hearing issues like the fact that she found the notice "extraordinary" as infringing on her "right" not to account for herself. Tr. at 30. Siff also mentioned in her trial court brief that the notice had invaded her right of privacy. Defendant's Brief in Support of Counterclaim at p. 5. Setting aside these points for the moment, the Supreme Court of Ohio recognized the right to privacy in *Housh v. Peth*, 165 Ohio St. 35, 39, 133 N.E.2d 340 (1956). According to the court, "[a]n actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause

mental suffering, shame or humiliation to a person of ordinary sensibilities." *Id.* at paragraph two of the syllabus.

{¶ 75} The privacy violation that *Housh* recognized has also been called "intrusion upon seclusion." *Lunsford v. Sterilite of Ohio, L.L.C.*, 162 Ohio St.3d 231, 2020-Ohio-4193, 165 N.E.3d 245, ¶ 32. " 'Intrusion upon seclusion' is based on the 'right to be left alone.' " *Id.* at ¶ 33, quoting *People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 111 Nev. 615, 630, 895 P.2d 1269 (1995). "It is 'akin to trespass in that it involves intrusion or prying into the plaintiff's private affairs.' " *Id.*, quoting *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 166, 499 N.E.2d 1291 (10th Dist.1985). " 'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.' " *Sustin v. Fee*, 69 Ohio St.2d 143, 145, 431 N.E.2d 992 (1982), quoting Restatement of the Law 2d, Torts, Section 652B (1977). " 'Examples would be wiretapping, watching or photographing a person through windows of his residence, and the kind of harassing collection practices involved in *Housh v. Peth*.' " *Scroggins v. Bill Furst Florist and Greenhouse, Inc.*, 2d Dist. Montgomery No. 19519, 2004-Ohio-79, ¶ 44, quoting *Killilea* at 166.

{¶ 76} Receiving a notice of liability such as the one at issue here might not be desired, but it is certainly not highly offensive to a reasonable person. Furthermore, contrary to Siff's claims, the notice does not require a recipient to search text messages; it says nothing about that. Registered owners are simply given the option of filing an

affidavit indicating why they are not liable. There was no intrusion on Siff's privacy.

**{¶ 77}** In her brief, Siff also argues that she sustained "mental suffering" over items like: distress "arising from demands on her time" by meeting court deadlines and spending long hours researching and writing; "[d]espair from uncertainty about when the process will end and from repeated disappointment over its not ending"; and "[a]nxiety and sleeplessness arising from doubts about whether the laws and their administrators will protect her rights and her safety." Appellant's Brief at p. 23. None of these points were mentioned in the trial court. Furthermore, even if they had been, none of these matters could even arguably rise to the level of legally protected mental suffering.

**{¶ 78}** In invasion of privacy cases, "[t]he intrusion must be of such a character as would shock the ordinary person to the point of emotional distress. * * * Thus, the standard is similar to that applicable to claims of intentional infliction of emotional distress." *Roe ex rel. Roe v. Heap*, 10th Dist. Franklin No. 03AP-586, 2004-Ohio-2504, ¶ 82, citing *Haller v. Phillips*, 69 Ohio App.3d 574, 578, 591 N.E.2d 305 (10th Dist.1990). In this vein, the Supreme Court of Ohio has described serious emotional distress as "emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759, 761 (1983), paragraph three(a) of the syllabus. A reasonable person, normally constituted, would not be unable to cope adequately with the "mental distress" occasioned by an $85 civil notice of liability, which, by the way, "is not a moving violation, and points shall not be assessed against a person's driver's license

under section 4510.036 of the Revised Code. In no case shall such a violation be reported to the bureau of motor vehicles or motor vehicle registration bureau, department, or office of any other state, nor shall such a violation be recorded on the driving record of the owner or operator of the vehicle involved in the violation." R.C. 4511.0910.

## C. Equal Protection

{¶ 79} Siff's final argument under this assignment of error is that the City's actions deprived her and other drivers who share automobiles of their right to equal protection. In this regard, Siff contends that the City's procedures arbitrarily violate the rights of persons who share autos by causing them to search their memories or private communications to identify a responsible party, whereas sole owners or drivers are not similarly burdened.

{¶ 80} "The Fourteenth Amendment to the United States Constitution requires any state to afford 'to any person within its jurisdiction the equal protection of the laws.' Section 2, Article I of the Ohio Constitution provides 'essentially identical' protection." *Park Corp. v. Brook Park*, 102 Ohio St.3d 166, 2004-Ohio-2237, 807 N.E.2d 913, ¶ 18, quoting *Kinney v. Kaiser Aluminum & Chem. Corp.*, 41 Ohio St.2d 120, 123, 322 N.E.2d 880 (1975). "Cities and states are free to draw distinctions in how they treat certain citizens. 'The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike.' " *Id.* at ¶ 19, quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).

{¶ 81} "The first step in an equal-protection analysis is determining the proper standard of review. When legislation infringes upon a fundamental constitutional right or the rights of a suspect class, strict scrutiny applies. * * * If neither a fundamental right nor a suspect class is involved, a rational-basis test is used." (Citations omitted.) *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 64.

{¶ 82} Siff concedes that the claims here do not involve a disadvantaged economic class, but she argues that strict scrutiny applies because privacy rights are involved. Appellant's Brief at p. 26. We disagree. Fundamental constitutional rights, of course, can trigger strict scrutiny. *E.g., State v. Williams*, 88 Ohio St.3d 513, 530, 728 N.E.2d 342 (2000). However, as noted, no privacy right is involved here. Therefore, if any test were to be applied, it would be the rational basis test, which "requires that a statute be upheld if it is rationally related to a legitimate government purpose." *Arbino* at ¶ 66.

{¶ 83} "Under the rational basis standard, we are to grant substantial deference to the predictive judgment of the General Assembly. * * * The state does not bear the burden of proving that some rational basis justifies the challenged legislation; rather, the challenger must negative every conceivable basis before an equal protection challenge will be upheld." (Citations omitted.) *Williams* at 531.

{¶ 84} In the case before us, we need not even reach a rational basis analysis, because Siff's argument is based on a logical fallacy. The photo-enforcement scheme does not create different classes of drivers, i.e., persons who own shared vehicles versus those who solely own a vehicle. In either situation, vehicle owners, whether shared or sole, may avoid liability by verifying that the person driving the car was not the owner or

that the car or license plate was stolen. *See* R.C. 4511.098(A)(2)(a)-(b). The other person driving the car does not have to be a shared owner or a household member; all owners, both shared and sole, can loan a car to another individual. The law, therefore, applies equally to all Ohio citizens, and no basis exists for an equal protection claim.

{¶ 85} In light of the preceding discussion, the second assignment of error is overruled.


## IV. Sufficiency of Evidence

{¶ 86} Siff's third assignment of error states that:

The Trial Court Erred Under Evid.R. 301 by Finding Appellees'

Evidence Sufficient to Award Judgment for Appellee[.] * * *

{¶ 87} Under this assignment of error, Siff argues that the traffic camera evidence was not sufficient for purposes of finding a car owner liable if the owner does not admit liability by paying the fine or submitting an affidavit. As support, Siff relies on Evid.R. 301, stating that under this rule, the City retains the burden of proving she was the person speeding and the burden of proof cannot be shifted to her. However, Siff has failed to accurately articulate the meaning and effect of evidentiary presumptions.

{¶ 88} Evid.R. 301 states that:

In all civil actions and proceedings not otherwise provided for by

statute enacted by the General Assembly or by these rules, a presumption

imposes on the party against whom it is directed the burden of going forward

with evidence to rebut or meet the presumption, but does not shift to such

party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast.

**{¶ 89}** As pertinent here, R.C. 4511.096(B) provides that:

The fact that a person or entity is the registered owner of a motor vehicle is prima facie evidence that that person or entity is the person who was operating the vehicle at the time of the traffic law violation.

**{¶ 90}** As an example of how prima facie or rebuttable presumptions operate, the Supreme Court of Ohio addressed the effect of such a presumption that arises against an employer in intentional tort cases brought by employees. *See Hoyle v. DTJ Ents., Inc.*, 143 Ohio St.3d 197, 2015-Ohio-843, 36 N.E.3d 122. In this regard, R.C. 2745.01(C) states that:

Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

**{¶ 91}** In discussing presumptions, the court remarked that:

A presumption is a procedural device that courts resort to "only in the absence of evidence by the party in whose favor [the] presumption would otherwise operate." * * * A legal presumption "imputes to certain facts or [a] group of facts a certain prima facie significance or operation." * * * "To establish a 'presumption' is to say that a finding of the predicate fact * * *

produces 'a required conclusion in the absence of explanation * * *.' " * * *

Under R.C. 2745.01(C), the predicate facts—an employer's deliberate removal of an equipment safety guard and directly resulting injury—give rise to a prima facie finding of intent to injure.

(Citations omitted.)   *Hoyle* at ¶ 23.

**{¶ 92}** The court further explained that:

"[A] presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption."   Evid.R. 301.   If that party produces evidence that "counterbalances the presumption or * * * leave[s] the case in equipoise,' then the presumption disappears and the case must be disposed of on the evidence presented, without reference to the presumption.   *But if the employer fails to produce evidence to rebut the presumption under R.C. 2745.01(C), then the effect of the presumption is that "the employee 'proves that the employer committed the [removal] with the intent to injure another.' "* Liberty Mut. Fire Ins. Co. v. Ivex Protective Packaging, Inc.*, S.D.Ohio No. 3:13–cv–175, 2014 WL 6687150, *2 (Nov. 26, 2014), quoting R.C. 2745.01(A).

(Emphasis added.)   *Hoyle*, 143 Ohio St.3d 197, 2015-Ohio-843, 36 N.E.3d 122, at ¶ 24.

**{¶ 93}** Contrary to Siff's contention, she did not rebut the presumption in R.C. 4511.096(B).   During testimony, Siff admitted that the car depicted in the notice of liability was her car and that she was the titled owner.   Tr. at 31.   When addressing the court,

Siff stated that she did not know whether she or her husband was driving the car that day and that she *chose not to investigate*. *Id*. at 13-14, and 17. While this was her choice, it was not evidence rebutting the statutory presumption; in fact, Siff's statements established nothing. Thus, while the City had the burden of proof, a lack of evidence could not rebut the prima facie case the City established. Accordingly, the third assignment of error is without merit and is overruled.

## V. Jurisdiction

{¶ 94} Siff's final assignment of error states that:

> The Trial Court Erred in Ruling That it Lacked Jurisdiction to Grant Relief to Appellant[.] * * *

{¶ 95} In its judgment, the trial court held that it lacked jurisdiction under R.C. 2727.03 to grant an injunction enjoining the City from issuing notices of liability. Judgment Entry at p. 2. In her brief, Siff states that while she did not ask the trial court for a "writ," the court could have "sincerely assessed" the counterclaim, "could have found the evidence insufficient and dismissed the case," and "still could have awarded damages." Appellant's Brief at p. 28.

{¶ 96} Returning to the counterclaim, itself, Siff asked the court: (1) to reimburse her for *time spent* defending herself and representing the public interest; and (2) for an injunction against the City to prevent it from issuing further notices of liability. Answer and Counterclaim at p. 1-2.

**{¶ 97}** Taking the issue of the financial reimbursement first, the typical way in which money is assessed in the litigation process for time spent is through an award of attorney fees. No matter how long a litigant may spend in dealing with litigation, this is not a compensable claim; it is simply an unavoidable part of the process.

**{¶ 98}** "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. Some exceptions exist, such as "when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees, * * * or when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant." (Citations omitted). *Id.* No such exceptions apply here. More importantly, courts do not grant attorney fees to pro se litigants. *E.g., State ex rel. Yant v. Conrad*, 74 Ohio St.3d 681, 684, 660 N.E.2d 1211 (1996).

**{¶ 99}** Furthermore, while Siff contends she is entitled to damages based on the alleged invasion of her privacy rights, we have already found that she did not raise this issue in her counterclaim, and that even if she had, no privacy rights were violated here.

**{¶ 100}** Concerning the second matter alleged in the counterclaim, " '[a]n injunction is an extraordinary remedy in equity where there is no adequate remedy available at law. It is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot.' " *Toledo v. State*, 154 Ohio St.3d 41, 2018-Ohio-2358, 110 N.E.3d 1257, ¶ 15, quoting *Garono v. State*, 37 Ohio St.3d 171, 173, 524 N.E.2d 496 (1988).

{¶ 101} The law is well-settled that "the Municipal Court is not a court of general civil jurisdiction. The Municipal Court is a court of limited and specific jurisdiction. This jurisdiction is set forth in Section 1901.18, Revised Code. Under this section Municipal Courts are given specific jurisdiction in designated areas of the law." *State ex rel. Foreman v. Bellefontaine Mun. Court*, 12 Ohio St.2d 26, 27-28, 231 N.E.2d 70, 71 (1967).

{¶ 102} In rejecting Siff's request for an injunction, the trial court relied on R.C. 2727.03, which states that:

At the beginning of an action, or any time before judgment, an injunction may be granted by the supreme court or a judge thereof, the court of appeals or a judge thereof in his district, the court of common pleas or a judge thereof in his county, or the probate court, in causes pending therein, when it appears to the court or judge by affidavit of the plaintiff, or his agent, that the plaintiff is entitled to an injunction.

{¶ 103} The trial court was correct in citing this statute, as the municipal court is not among the courts listed that have the ability to issue injunctions. "R.C. 2727.03 and R.C. 2731.02 confer jurisdiction to grant injunctions and to issue writs of mandamus and make no provision for such jurisdiction in municipal courts." *Village of Mcclure v. Rhoads*, 3d Dist. Henry No. 7-84-1, 1985 WL 7221, *2 (Oct. 3, 1985). *See also Hoerner v. Downs*, 63 Ohio App.3d 286, 288, 578 N.E.2d 830 (2d Dist.1989) (municipal courts lack jurisdiction to enter restraining orders); and *Dudkeiwicz v. United Mobile Homes*, 3d Dist. Marion No. 9-95-23, 1995 WL 577817, *2 (Sept. 19, 1995) (a municipal court cannot grant equitable relief in the nature of a permanent injunction).

{¶ 104} Accordingly, the fourth assignment of error is without merit and is overruled.

{¶ 105} In summary, the trial court did not abuse its discretion in overruling Siff's objections to the magistrate's decision, and no error occurred at the trial court level.

## V. Conclusion

{¶ 106} All of Siff's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.